DAVID WALCOTT KENDALL MEMORIAL SCHOOL *v.* CITY
OF GRAND RAPIDS.

1. COURTS—PRECEDENTS—COURT OF APPEALS—OPINIONS OF THE AT-
TORNEY GENERAL.

The Court of Appeals is not precedentially bound by conclusions
of the attorney general as expressed in his opinions.

2. TAXATION—PROPERTY TAX—EDUCATIONAL INSTITUTION—EXEMP-
TION.

The statute granting property tax exemption to educational insti-
tutions has been construed to mean general educational insti-
tutions and not educational institutions organized and con-
ducted for special purposes only (CLS 1961, §§ 211.7, 211.9).

3. SAME—PROPERTY TAX—EXEMPTION—EDUCATIONAL INSTITUTION.

An educational institution is entitled to the statutory tax exemp-
tion granted educational institutions if a substanial portion of
its student body would, and could, continue their education in
the same major field at a State-supported school (CLS 1961,
§§ 211.7, 211.9).

4. SAME—PROPERTY TAX—EXEMPTION.

Tax exemption statutes are to be strictly construed against the
person seeking the exemption (CLS 1961, §§ 211.7, 211.9).

5. SAME—EDUCATIONAL INSTITUTION.

An educational institution must fit into the scheme of education
of the State to qualify for the statutory tax exemption from
property taxes (CLS 1961, §§ 211.7, 211.9).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorney General § 8; 20 Am Jur 2d, Courts
§§ 183, 189.
[2, 3, 5, 6] 51 Am Jur, Taxation §§ 619, 620.
[4] 51 Am Jur, Taxation § 524.
[7] 5 Am Jur 2d, Appeal and Error § 1009.

6. SAME—PROPERTY TAX—EXEMPTION—SCHOOL OF DESIGN.

School of design operated by a nonprofit educational corporation, approved by State board of education, not accredited by North Central Association or National Association of Schools of Art, but holding membership in American Institute of Design and National Society of Interior Design, of which organizations the University of Michigan and Michigan State University are the only other Michigan members, which requires its entrants to be high school graduates with a "C" or better average, which offers some courses in the liberal arts, whose program is completed in 3 academic years, whose students may transfer to other colleges and whose graduates have been accepted for further work at State universities, and which has programs similar to some at the State universities, *held*, to be such an educational institution as is granted property tax exemption by statute (CLS 1961, §§ 211.7, 211.9).

7. COSTS—PUBLIC QUESTION—TAXATION.

No costs are allowed by Court of Appeals on taxpayer's appeal in proceeding to recover taxes paid under protest by nonprofit educational institution, a public question being involved (CLS 1961, §§ 211.7, 211.9).

Appeal from Kent, Vander Ploeg (Claude), J. Submitted Division 3 February 6, 1968, at Grand Rapids. (Docket No. 3,888.) Decided April 25, 1968. Leave to appeal denied July 24, 1968. See 381 Mich 765.

Complaint by the David Walcott Kendall Memorial School, a nonprofit corporation, against the City of Grand Rapids and certain city officials to recover city property taxes paid under protest, and for an injunction restraining defendants from future assessment of property taxes. Judgment for defendant. Plaintiff appeals. Reversed.

*Varnum, Riddering, Wierengo & Christenson* (Peter J. Armstrong, of counsel), for plaintiff.

*Steven L. Dykema,* City Attorney, and *George O. Walters,* Assistant City Attorney, for defendant.

FITZGERALD, P. J.   Plaintiff, a nonprofit corporation, is seeking the exemption from taxation provided by CLS 1961, § 211.7 (Stat Ann 1961 Cum Supp § 7.7), and CLS 1961, § 211.9 (Stat Ann 1960 Rev § 7.9).   Action was commenced October 29, 1963.

An appeal to this Court of the determination of the status of an educational institution under these statutes requires a re-examination of the particular factual circumstances which resulted in a decision of the trial court that the statutes do or do not provide exemption from taxation.   Thus, the particular facts are these:

Plaintiff educational corporation was created in 1928 as the result of a bequest of money by Helen M. Kendall for the beginning of an art school in memory of her husband.   The school continues to operate in defendant city.   The following facts, taken from the briefs and arguments of the parties to this appeal, concern the recognition of the corporation as an educational institution by other recognized authorities:

1. It is approved by the Michigan Board of Education.   It is not accredited by the North Central Association of Colleges and Secondary Schools; nor is it accredited by the National Association of Schools of Art (application pending); nor is it rated by the American Association of Collegiate Registrars and Admissions Officers.

2. It is granted an exemption from Federal income tax, and its purchases are exempt from the sales and use taxes of the State of Michigan.   Charitable contributions to it are deductible from income subject to Federal tax.   Veterans' benefits are provided to qualified students by the Federal government.   Draft deferments are given to qualified students.

3. The school holds membership in the American Institute of Design and the National Society of Interior Design. The University of Michigan and Michigan State University are the only other institutions in Michigan belonging to these associations, according to the testimony offered.

Additional facts concerning the Kendall School of Design include:

1. To be admitted, a student must be a high school graduate presenting a C average or better and 3 letters of recommendation. A portfolio of the student's artistic work and abilities is evaluated.

2. The freshman class is composed of 160 students with 38' being transferees from colleges and universities. The total student body consists of 325 students representing all 50 states.

3. The graduates take positions in their industries upon graduation from Kendall. Most leave Michigan. Ten of the 45 graduates of 1967 have applied to the University of Michigan. Other graduates have applied to and have been accepted at the University of Michigan and Wayne State University by reason of an agreement between the schools; at Michigan State University and Grand Valley State College.

4. When determining credit for courses taken at Kendall, the school to which transfer is sought has generally given 1 to 1–1/2 years' credit to the Kendall graduate. The amount of advanced standing granted varies according to the goals and proven abilities of the particular student.

5. Grand Rapids Junior College does not accept Kendall credits as it (G.R.J.C.) is a nondegree-granting middle institution and because Kendall is not listed in a book used by registrars to evaluate transfers from other schools. Calvin College finds

no reference to Kendall in any book of reference used by its registrar, but it could not state that a Kendall student would not be admitted, inasmuch as none had ever applied to transfer into Calvin.

6. Michigan State University, the University of Michigan and Wayne State University have programs similar to those offered at Kendall. Kendall offers only 2 courses in what may be called liberal arts, which are worth about 12 credits on transfer elsewhere, while the 3 universities require their art students to take about one-third of their course in liberal arts.

7. The requirement for graduation from Kendall is 3 years of study, excluding summers. Attendance at class sessions is mandatory and takes 30 hours a week. Four hours a night is the recommended study and preparation time. The school provides tuition scholarships and an extensive placement bureau. Credits are not given for each course because all courses in the particular field of study must be taken to qualify for graduation. This creates problems when a student seeks to transfer to a university which does offer specific credits for various courses.

8. The faculty consists of people well known in design, and they work a substantial portion of their time at the school. Most of the faculty are college graduates; many have advanced degrees.

9. Kendall was not assessed for taxation until 1962 when it moved into new buildings at a different location.

The issue is apparent: On the basis of the above facts, is the plaintiff entitled to a tax exemption as an educational institution under the provisions of CLS 1961, § 211.7 (Stat Ann 1961 Cum Supp § 7.7), and CLS 1961, § 211.9 (Stat Ann 1960 Rev § 7.9)?

We are immediately faced both with the fact that plaintiff is a "specialized" school and with the allegation of the defendant that the law of this State clearly does not grant an exemption to such a "special school". This allegation is derived from 4 cases which comprise the bulk of Michigan law on this issue. The first decision, in *Parsons Business College* v. *City of Kalamazoo* (1911), 166 Mich 305, denies exemption to a school which taught bookkeeping, stenography, and related courses to students who attended 3-, 6-, 9-, and 12-month courses. The standard there established was derived from the case of *Detroit Home & Day School* v. *City of Detroit* (1889), 76 Mich 521, and the *Parsons* court concludes that (pp 309, 310):

"The minority opinion shows that this [Detroit Home & Day School] was a school with kindergarten, primary, preparatory, and collegiate departments. * * * In the advanced departments there were the courses of instruction usual in the colleges of this State. The court determined that it was a general educational establishment. * * * The court without doubt was correct in classifying that school as a *general educational institution. This is the 'educational institution' intended by the legislature in the statute under consideration* in the instant case. *We have then this standard, as interpreted by the court,* by which to measure the institution of complainant which seeks the protection of exemption from taxes *accorded to general educational institutions.*

"In our opinion it does not in any way measure up to the standard it has set up and claims for itself. It cannot be called a general educational institution. It is organized and conducted for *special purposes only.* * * * It appears from the record that the incentive to incorporation was to avoid taxation, and not to obtain recognition as a general educational institution." (Emphasis supplied.)

Therein are sown the seeds for exclusion of so-called
"special" schools in *City of Detroit* v. *Detroit Com-
mercial College* (1948), 322 Mich 142, 153, which is
alleged to be controlling of this case:

"It should be noted that the course of study pre-
scribed by the Webb Academy [in *Webb Academy*
v. *City of Grand Rapids* (1920), 209 Mich 523] fitted
into the general scheme of education provided by the
State and supported by public taxation.  *  *  *  It
clearly appears that the Detroit Commercial College
is a *specialized school operated for the purpose of
training its students to enter into specialized fields
of employment. It is not such a school or college as
is entitled to tax exemption.*   (Emphasis supplied.)

The Court also stated, in discussing the *Webb* de-
cision (p 151):

"We there held that even though the school was
conducted for profit it was entitled to exemption
from real estate taxes because it was a *general ed-
ucational institution* and not a business college or
*special school.*"   (Emphasis supplied.)

To complete the available reference on this issue,
we refer to an opinion of the attorney general while
noting that we are not precedentially bound to his
conclusions.  In evaluating the case of the *Detroit
Conservatory of Music,* the opinion states (p 342):

"And the apparent doctrine of the *Detroit Com-
mercial College Case* leads to the conclusion that
many, if not all, of the professional departments of
the State University and the Michigan State College
would, if owned and operated by private corpora-
tions be liable to taxation.   There is force in the
argument that as interpreted by the court, the only
schools coming within the exemption provisions of
the first sentence of the fourth subdivision of CL
1948, § 211.7, as amended, are those teaching what

is generally described as 'The Three R's' or at the most, to those teaching an advanced or more difficult version of the 'The Three R's'. Whether attorney general is in accord with such a construction of the statute is immaterial. If, as it seems apparent, the court has so construed it, all are bound by that construction.

"In the opinion of the attorney general the Detroit Conservatory of Music is a specialized school operated for the purpose of training its students to enter into specialized fields of employment and is not such a school or college as is entitled to tax exemption under the rule announced in *City of Detroit* v. *Detroit Commercial College.*" (Opinion No 1008, September 9, 1949.)

The Kendall School of Design offers only 2 liberal arts courses, and it admittedly does not teach "The Three R's". Are we thus irrevocably bound to state that this institution falls under the "specialization" rule which bars any exemption, particularly in view of the wide difference in factual situation presented by these prior cases?

It is apparent that the rapidly changing concept of mass education has required a proliferation of new institutions of higher learning to provide for the increasing desire and needs of college-age young people of this State to acquire advanced education. To apply the rule of the *Detroit Commercial College Case* to the present case, we must find that even if a school exists, and is created or is expanded to meet the needs of these students in a specialized major field of advanced study which substantially parallels the same major field of study at a State supported college or university, tax exemption cannot be granted for that school. It must be a "general educational institution"; not a "special school". There have been no decisions in this area for 20 years. Certainly the growth of the established State uni-

versities, rapid enough in itself, has not been able to keep pace with the increased demands of thousands of young people to make use of the existing college and university facilities which in turn must be expanded at the expense of the taxpayer. Such was not the case in 1889, 1911, 1948, and 1949. Many students find it necessary and desirable to undertake their advanced education at smaller private and public colleges and universities and their decision appreciably reduces the great burden placed on larger institutions. There is little doubt that the quality of the advanced design and art education offered at Kendall can be equated with similar programs offered at the State universities. The requirement of taking courses in liberal arts at the universities requires the student to engage in an additional year of study. Where he desires to study creative design and art, must the State demand that his school increase its liberal arts department, expand its facilities and faculty, raise the tuition, and require the student to attend school another year in order that it may meet an exemption requirement established in 1911 and interpreted to say that it cannot specialize but that it must be a general educational institution?

The plaintiff argues that if the courses at the specialized school are substantially comparable to courses offered at the colleges and universities, then exemption should be granted. The defendant counters by engaging in the somewhat specious reasoning that if a course in dancing or golf is offered at a State university, then, under plaintiff's argument, all dancing schools and golf schools would also be tax exempt. It is clear that the legislature did not intend this. Such was the argument made in *City of Detroit* v. *Detroit Commercial College, supra,* where courses in shorthand, court reporting, typewriting,

bookkeeping, business mathematics, constitutional and business law, geography, insurance, banking, advertising and real estate, stocks and bonds, and business decorum were taught. With the exception of the opinion of the attorney general, each school which has sought and been denied exemption in the courts of this State has been a "business" school from which credit could not be transferred to another institution of higher education—unlike Kendall's situation.

We formulate the following test to be applied in dealing with schools of higher education which seek tax exemption drawn from prior cases and the factual situation before us: If the particular institution in issue were not in existence, then would, and could, a substantial portion of the student body who now attend that school instead attend a State-supported college or university to continue their advanced education in that same major field of study? The probability of their attendance elsewhere on the college or university level would have to be derived *inter alia* from the requirements for admission to the school seeking exemption, the qualifications of the student, the major field of study undertaken by the student, the time necessary to complete the prescribed course of study, and the comparative quality and quantity of the courses offered by the school to the same programs at the State colleges and universities. If such an institution is educating students qualified and willing to attend a State college or university, majoring in the same field of study, then it can be said that this institution is assuming a portion of the burden of educating the student which otherwise falls on tax-supported schools.

We are aware of the rule that exemption statutes are to be strictly construed and that exemptions are

not to be lightly given.  See *City of Detroit* v. *Detroit Commercial College, supra.*  However, in considering the formulation of the rationale and rule given above, we also are forced to examine the broad proposition that the legislature clearly intends to tax specialized schools.  In doing so, we review again the Michigan case law on this issue.

Reference is here made to the emphasized language in *Parsons Business College* v. *City of Kalamazoo, supra,* where the Court defines the legislative intent that an "educational institution" be of a general" nature.  Examination of the opinion in *Detroit Home & Day School* v. *City of Detroit,* supra (p 523), shows the Court was faced with the statute reading:

"Library, benevolent, charitable and scientific institutions incorporated under the laws of this State, and such real estate as shall be occupied by them for the purposes for which they were incorporated (shall be exempted)."  (Laws of 1887, p 415, § 3, subdivision 2.)

The Detroit Home & Day School was attempting to fit within the phrase "scientific institutions" and the Court continued (p 523):

"But it is a matter of common knowledge that *all general educational establishments* have universally been known as 'scientific institutions' and fall naturally and directly within it."  (Emphasis supplied.)

The Court did not say specialized schools do not fall within this statute.  It was interpreting the statute in the light of the particular factual circumstances of the Detroit Home & Day School.  The Court continued (p 523):

"A 'scientific institution' under the language of all civilized countries, means an institution for the advancement or promotion of knowledge."

The *Parsons* Court noted that the words "educational" and "solely" had been added by PA 1909, No 309, § 7, ¶ 4, and that, *ergo*, the addition of these words showed the clear intent of the legislature to require that such educational corporations be "general". If an exemption statute is to be strictly construed, then in so doing we find no requirement therein that an "educational institution" also be of a "general" nature. The courts in the *Parsons Case* and the *Detroit Commercial College Case,* dealing as they were with business colleges, interpreted the intent of the legislature to support the conclusion that the particular *business* school seeking tax exemption was to be denied such exemption. We apply the observation of Justice Oliver Wendell Holmes made in the case of *Merrill* v. *Preston* (1884) 135 Mass 451:

"The successive neglect of a series of small distinctions in the effort to follow precedent, is very liable to end in perverting instruments from their plain meaning."

We also agree with the statement concerning the application of narrow precedents based on certain fact situations made by Justice Benjamin Cardozo in his treatise entitled the *Growth of the Law* at page 99:

"The vigils and the quest yield at most a few remote analogies, which can be turned as easily to the service of one side as to the service of the other."

In finding that no court of this State has been presented with a request for a tax exemption by an institution of higher education in a similar position to that of the Kendall School of Design, we do not conceive these decisions concerning business schools in 1911 and 1948 to include all specialized institutions of higher education in 1963 or 1968. It may be

said that business schools, beauty and barbering "colleges", "mechanics" schools and others of this nature are not to be given exemptions by reason of the goals and policies sought to be implemented by CLS 1961, § 211.7 (Stat Ann 1961 Cum Supp § 7.7), and CLS 1961, § 211.9 (Stat Ann 1960 Rev § 7.9).

We agree with the statement of the Court in *City of Detroit* v. *Detroit Commercial College, supra,* that an institution seeking exemption must fit into the general scheme of education provided by the State and supported by public taxation. We find Kendall School of Design, admittedly an institution of specialized higher education, to fit into the scheme of education of this State. Were it not for the existence of the plaintiff institution, it is clear that the burden imposed on the art and design departments of our State-supported colleges and universities would be appreciably increased.

Reversed. No costs, a public question being involved.

J. H. GILLIS and BOWLES, JJ., concurred.