LADIES LITERARY CLUB v CITY OF GRAND RAPIDS

Docket No. 63898. Decided November 24, 1980. On application by the
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the decision of the Court of
Appeals and reinstated the order of the Tax Tribunal.

The Ladies Literary Club claimed an exemption from real prop-
erty taxes assessed by the City of Grand Rapids on its club-
house, which houses a library, auditorium, and nursery, on the
ground that it is a nonprofit theater, library, benevolent, chari-
table, educational, or scientific institution. The Tax Tribunal
decided that the plaintiff did not qualify for the exemption
because it also engages in general cultural and social activities.
The Court of Appeals, D. F. Walsh, P.J., and M. J. Kelly and
Oppliger, JJ., reversed, holding that the activities of the plain-
tiff merit the exemption and that the fact that it is also a social
organization is not a sufficient ground for the denial (Docket
No. 78-4667). Defendant applies for leave to appeal.

In an opinion by Justice Moody, joined by Justices Kavanagh,
Levin, and Ryan, the Supreme Court held:

1. An organization need not fit neatly into only one of the
statutory categories; it may be involved in two or more of the
tax-exempt activities. But the underlying requirement is that
an organization must engage in one or more of the statutory
activities. Exemption from taxation effects the unequal removal
of the burden generally placed on all landowners to share in
the support of local government; since exemption is the antithe-
sis of tax equality, exemption statutes are to be strictly con-
strued in favor of the taxing unit. Courts must not succumb to
the temptation to read into the statute their beliefs about what
types of organizations and activities merit tax exemption. If the
organization engages in activities which are not tax-exempt, it
does not satisfy the statutory requirement.

2. The plaintiff clearly carries out laudable benevolent and
charitable activities. Much of its energy also is expended in
promoting trips to see museum exhibits, music festivals, and
plays; sponsoring lectures on antiques, music, and poetry; and
conducting classes in painting, photography, and yoga. It ar-
gues that virtually all of its activities are predominantly educa-

tional in nature; however, that does not require a conclusion that these educational or cultural programs may be considered as being sponsored by an "educational institution". Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption. The plaintiff must fit into the general scheme of education provided by public taxation, and must make a substantial contribution to the relief of the educational burden of government.

3. It cannot be maintained that were it not for the plaintiff's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. Therefore, the programs do not warrant the claimed exemption. The Tax Tribunal referee was correct in finding that the plaintiff is essentially a social club which happens to engage in some nonprofit activities from which the community may benefit culturally.

The decision of the Court of Appeals is reversed and the order of the Tax Tribunal is reinstated.

Justice Williams, joined by Chief Justice Coleman and Justice Fitzgerald, would affirm the tax exemption. The Tax Tribunal interpreted the term "educational" too narrowly by suggesting that the classes and workshops offered by the plaintiff were "cultural", rather than educational. Questions of tax exemption are to be strictly construed in favor of the taxing power, but the courts must not construe the statute so narrowly as to do violence to the Legislature's intent. It is clear that the Legislature wished to promote nonprofit theaters, libraries, and charitable, educational, and scientific institutions by providing them a property tax exemption. The Tax Tribunal committed error in finding that cultural activities are not included within the education exception. Education does not stop with an end to formal schooling. The distinction drawn by the tribunal between educational and cultural activities is vacuous. The plaintiff's programs are not mere social gatherings but are valuable charitable and educational activities which are made available to persons in the area without regard to their wealth or social status.

92 Mich App 567; 285 NW2d 212 (1979) reversed.

*Warner, Norcross & Judd* (by *John H. Logie)* for plaintiff.

*Philip A. Balkema,* City Attorney, and *Daniel A.*

*Ophoff* and *Michael D. McGuire,* Assistants City Attorney, for defendant.

BLAIR MOODY, JR., J. Ladies Literary Club filed a tax assessment appeal with the Michigan Tax Tribunal seeking a real property tax exemption classification under MCL 211.7; MSA 7.7. Tribunal Referee John M. LaRose denied plaintiff's request finding plaintiff to be "essentially a social club". On rehearing, the full tribunal denied plaintiff's tax exemption claim, holding that the club did not exclusively engage in the statutory tax-exempted activities.

The Court of Appeals reversed. It held that plaintiff's activities were sufficiently within the penumbra of the statute's exemption coverage in accordance with the general legislative intent. The Court concluded that "the Ladies Literary Club merits exemption under the statute". 92 Mich App 567, 570; 285 NW2d 212 (1979).

Defendant City of Grand Rapids appealed to this Court, claiming:

"[T]he Court of Appeals clearly invaded the province of the Legislature. The Court, essentially, substituted its judgment as to what property should be exempt from property taxes for the Legislature's judgment as expressed in MCL 211.7(d); MSA 7.7(d)."

The case turns on statutory construction in conjunction with the specific facts of this case. The basic issue is whether the plaintiff is a non-profit theater, library, benevolent, charitable, educational, or scientific institution within the meaning of MCL 211.7(d); MSA 7.7(d). The statute declares in pertinent part:

"The following property is exempt from taxation under this act:

*  *  *

"(d) Real estate or personal property as shall be owned and occupied by nonprofit theater, library, benevolent, charitable, educational, or scientific institutions and memorial homes of world war veterans incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incorporated."

A claimant seeking the real property exemption must establish four elements, clearly set forth in *Engineering Society of Detroit v Detroit*, 308 Mich 539, 550; 14 NW2d 79 (1944):

"(1) The real estate must be owned and occupied by the exemption claimant;

"(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

"(3) The claimant must have been incorporated under the laws of this State;

"(4) The exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purpose for which it was incorporated."

In order to determine whether plaintiff qualifies under the statutory exemption, we must briefly review the facts. Plaintiff was a major contributor in the founding of the Grand Rapids Public Library, and continues to promote reading and the enhancement of knowledge by providing a small library for public use. The library is housed in plaintiff's 93-year-old clubhouse along with a 480-seat auditorium and a nursery which cares for children during scheduled activities. The club-

house, which has been designated a national and state historic site, is the subject of the disputed property tax.

Ladies Literary Club engages in a wide spectrum of activities ranging from classes in writing and theater to lectures on antiques, UFO's, and house plants. The club has sponsored bus trips to Interlochen, Kalamazoo, Detroit, and Chicago for music festivals, Shakespearean plays, museum exhibits, and flower shows. The classes, lectures, and trips are financed by membership dues and income from coffee concerts, plays, and style shows held throughout the year. All of the programs are open to the public although an admission fee is charged to nonmembers.

Public-service and charitable activities are also sponsored by the club. As examples, the club fostered a benefit New York Street Theater performance for migrant workers and assisted a membership drive for a local public television station.

The plaintiff points out that for the past several years membership has been unrestricted and that the club enjoys tax-exempt status under § 501(c)(3) of the Internal Revenue Code.[1] The club claims that it also qualifies for a property exemption

---

[1] Although recognizing that "determination by the Internal Revenue Service that an organization qualified for federal tax exemption under § 501(c)(3) does not under Michigan law, in and of itself, qualify an organization for property tax exemption", plaintiff nevertheless originally argued before the Tax Tribunal "that the determination by the IRS should be afforded great weight with regard to the characterization of the organization". Plaintiff argued that since Internal Revenue Service Regulation 1.501(c)(3)-1(b)(1)(iii) specifically excludes social clubs from receiving the federal tax exemption "it should, in the absence of any contrary evidence, be dispositive as to the nature of the organization". Plaintiff has apparently abandoned this argument on appeal. Nevertheless, we note in passing that the Tax Tribunal was correct in refusing to make a presumption in favor of exemption based on the Internal Revenue Service ruling. MCL 211.7(d); MSA 7.7(d) is narrower in scope than § 501(c)(3). Therefore no presumption may be drawn. See *American Concrete Institute v State Tax Comm,* 12 Mich App 595, 606; 163 NW2d 508 (1968).

under the state act because its activities fall within one or more of the statutory categories and urges that it need not fit neatly into only one classification. See *Attorney General v Common Council of Detroit,* 113 Mich 388, 390; 71 NW 632 (1897).

The Ladies Literary Club is correct in stating that an organization need not fit neatly into only one of the statutory categories. An institution may be involved in two or more tax-exempt areas. For example, a religious order which runs a home and school for orphans may not be solely an educational institution or solely a charity. But the underlying requirement is that an organization must engage in one or more of the statutory activities. Real or personal property is exempt only if it is owned and occupied by the various types of institutions "solely for the purposes for which the institutions were incorporated". MCL 211.7(d); MSA 7.7(d).

This Court has long held that since "[e]xemption from taxation effects the unequal removal of the burden generally placed on all landowners to share in the support of local government [and] [s]ince exemption is the antithesis of tax equality, exemption statutes are to be strictly construed in favor of the taxing unit". *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 669-670; 242 NW2d 749 (1976). See *Evanston YMCA Camp v State Tax Comm,* 369 Mich 1; 118 NW2d 818 (1962); *Webb Academy v Grand Rapids,* 209 Mich 523; 177 NW 290 (1920); *St Joseph's Church v Detroit,* 189 Mich 408; 155 NW 588 (1915).[2]

---

[2] "Exemption statutes must be strictly construed against the exemption claimant.

" 'Taxation, like rain, falls on all alike. True, there are, in any taxing act, certain exceptions, certain favored classes, who escape the

Justice COOLEY best summarized the rule of law in his treatise on taxation:

"An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt." 2 Cooley on Taxation (4th ed), § 672, pp 1403-1404. See *Detroit v Detroit Commercial College,* 322 Mich 142, 148-149; 33 NW2d 737 (1948).

We must not succumb to the temptation to read into the statute our beliefs as to what type of organizations and activities merit tax exemption. If the club engages in non-tax-exempt activities, it does not satisfy the statute's requirement.

The crux of this case centers upon an assessment of the second and fourth tests stated in *Engineering Society:* May the Ladies Literary Club be characterized as a non-profit theater, library, benevolent, charitable, educational or scientific institution whose premises are used solely for such purposes?

yoke. But one claiming the unique and favored position must establish his right thereto beyond doubt or cavil.' *In re Smith Estate,* 343 Mich 291, 297; 72 NW2d 287 (1955)." *American Concrete Institute v State Tax Comm, supra,* 607.

It appears some club activities relate to the use of its theater. Plaintiff also provides a library for public use. The club clearly carries out laudable benevolent and charitable activities. Thus, it is possible to conclude that a part of the club's activities fall within the institutional exemption categories.

Nevertheless, much of the organization's energy also is expended in promoting trips to see museum exhibits, music festivals, and plays; sponsoring lectures on antiques, music, and poetry; and conducting classes in painting, photography, and yoga. The club urges that these activities are predominantly educational in nature, thus compelling the determination that virtually all of the plaintiff's activities fall within one or another of the exemption categories.

We cannot conclude that these educational or cultural programs may be considered as being sponsored by an "educational institution". Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption.

In *Detroit v Detroit Commercial College, supra,* our Court determined that an institution seeking an educational exemption must fit into the general scheme of education provided by the state and supported by public taxation. This proposition was refined in *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231; 160 NW2d 778 (1968), which declared that an educational exemption may be available to an institution otherwise within the exemption definition, if the institution makes a substantial contribution to the relief of

the burden of government.[3]

It cannot be maintained that were it not for the Ladies Literary Club's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. The club's programs do not sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption. See *American Society of Agricultural Engineers v St Joseph Twp,* 53 Mich App 45; 218 NW2d 685 (1974); *American Concrete Institute v State Tax Comm,* 12 Mich App 595; 163 NW2d 508 (1968).

The tribunal referee was correct in finding that plaintiff "is essentially a social club which happens to engage in some non-profit activities. While the community may benefit culturally from [plaintiff's] activities, these activities are not the type which entitle one to an exemption because he has relieved the community from the expense of a like service."

Similarly the full tribunal noted:

"[W]hile [plaintiff's] activities may well be enlightening and educational within the broad sense of the word, the most accurate description of such activities is that they are cultural. * * *

"The upshot of a careful consideration of all materials submitted to this tribunal is that we are constrained to hold that the Ladies Literary Club is an institution the thrust of whose activities are *[sic]* cultural and social in nature." Michigan Tax Tribunal Opinion, pp 5-6.

---

[3] The test formalized in *Kendall* is:

"If the particular institution in issue were not in existence, then would, and could, a substantial portion of the student body who now attend that school instead attend a state-supported college or university to continue their advanced education in that same major field of study?" 11 Mich App 231, 240.

As Justice COOLEY noted:

"[S]ince taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." 2 Cooley on Taxation (4th ed), § 672, pp 1404-1408. See *Detroit v Detroit Commercial College, supra.*

Therefore, it is for the Legislature, not this Court, to expand statutory exemptions.

Accordingly, in lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the decision of the Court of Appeals and reinstate the ruling of the Michigan Tax Tribunal. No costs, a public question being involved.

KAVANAGH, LEVIN, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

WILLIAMS, J. *(for affirmance).* Plaintiff Ladies Literary Club applied for an exemption under MCL 211.7; MSA 7.7 from real property tax assessed by defendant City of Grand Rapids. Michigan Tax Tribunal Referee John M. LaRose denied the requested exemption on March 9, 1978. On rehearing the full tribunal held that plaintiff's real property did not fall within the definition of exempt property as described by MCL 211.7(d); MSA 7.7(d). The Court of Appeals unanimously reversed, holding that plaintiff "merits exemption

under the statute". 92 Mich App 567, 570; 285 NW2d 212 (1979). Defendant brings this application for leave to appeal claiming that the Court of Appeals overstepped its authority by deciding what the law should be rather than looking to the plain meaning of the statute or the Legislature's intent.

Plaintiff can trace its roots back to 1869 when a study group was formed among students of a history class to aid in their reading and writing assignments and to discuss cultural and civic matters. The following year the group formed the Ladies Library Association which gradually expanded its programs to include lectures on literature, art, music and current events. In keeping with its former name, plaintiff organization helped establish the Grand Rapids Public Library in 1876 by donating 1,200 volumes. In 1887 plaintiff built a "clubhouse" which houses an auditorium, small library and nursery. Today the building, which forms the basis for this property tax exemption suit, is a national and state historic site.

Plaintiff organization is entirely financed through private money, the majority of which is comprised of annual dues of $25. Membership is open to the general public and is actively solicited, but one need not be a member to attend any of plaintiff's activities. Plaintiff regularly holds classes and workshops in such diverse areas as writing, theater, portrait painting, Danish stitchery, backgammon, photography, yoga and social dancing. Annual lecture series featuring speakers on journalism, antiques, UFO's and house plants are also conducted. Not being limited to the confines of Grand Rapids, plaintiff has expanded its educational program by sponsoring bus trips for special events. In the past trips have been taken to

Interlochen for a Van Cliburn Music Festival, Kalamazoo and Detroit for Shakespearean plays, and to Chicago for the King Tut Treasure Exhibit and the Chicago Flower Show. Plaintiff engages in community service activity such as working with the Santa Claus Girls distributing gifts to children and helping the local public television station's membership and fund drives. To help finance these activities while further promoting their interest in the arts plaintiff has sponsored:

" '[Grand Rapids] Symphony coffee concerts; * * * black theatre, including the New York Street Theater in a benefit performance for migrant farm workers; the combined Latvian choirs of Kalamazoo and Grand Rapids, Bahai Community, Worldwide Church of God for Christmas and New Years, Catholic Central High School plays and jazz concerts; Bible College plays; music and dance recitals, AME Community Church play; style shows for U of M and Hope College, etc.' "

All of plaintiff's programs are free to members while nonmembers are charged an admission fee. The club has been designated a nonprofit tax exempt corporation by the Internal Revenue Service under § 501(c)(3) of the Internal Revenue Code.

The sole question before us is whether on the above facts the Ladies Literary Club qualifies for the property tax exemption in MCL 211.7(d); MSA 7.7(d):

"The following property is exempt from taxation under this act:

*    *    *

"(d) Real estate or personal property as shall be owned and occupied by nonprofit theater, library, benevolent, charitable, educational, or scientific institutions and memorial homes of world war veterans incor-

porated under the laws of this state with the buildings
and other property thereon while occupied by them
solely for the purposes for which the institutions were
incorporated."

In *Engineering Society of Detroit v Detroit,* 308
Mich 539, 550; 14 NW2d 79 (1944), this Court set
down the following test for determining whether a
property exemption exists under the statute:

"(1) The real estate must be owned and occupied by
the exemption claimant;

"(2) The exemption claimant must be a library, be-
nevolent, charitable, educational or scientific institu-
tion;

"(3) The claimant must have been incorporated under
the laws of this State;

"(4) The exemption exists only when the buildings
and other property thereon are occupied by the claim-
ant solely for the purposes for which it was incorpo-
rated."

The Tax Tribunal found that plaintiff has li-
brary, educational, scientific, charitable, and be-
nevolent functions but nevertheless denied the
exemption because it found that plaintiff also en-
gaged in general cultural and social activities. The
tribunal noted:

"It is recognized that an institution could conceivably
qualify for exemption in more than one class. For
example, an educational institution with a science cur-
riculum, and which conducts research, might qualify for
exemption in either class. However, there is still the
requirement of exclusivity. *Such an institution would
not qualify for exemption if it also conducted activities
of a non-exempt nature.*

\*   \*   \*

"Regarding petitioner's claim that it functions as a

library, and also as a non-profit theater, these might be possible bases for exemption, if petitioner also met the exclusivity requirement contained in the statute. *However, petitioner's activities include the offering of 'classes' and workshops in a variety of cultural, artistic, literary and handicraft subjects.* Petitioner also sponsors bus trips to such events as a Van Cliburn concert, a Chicago flower show, an exhibition of King Tut's treasures and various stage productions. We hold that while such activities may well be enlightening and educational within the broad sense of the word, *the most accurate description of such activities is that they are cultural. * * ***

"The upshot of a careful consideration of all materials submitted to this tribunal is that we are constrained to hold that the Ladies Literary Club is an institution the thrust of whose activities are *[sic] cultural and social in nature."* Michigan Tax Tribunal Opinion, pp 5-6 (emphasis added).

The Tax Tribunal was correct in noting that Michigan requires that property which is tax exempt be used exclusively for the enumerated categories including "educational". However, the tribunal interpreted "educational" too narrowly. It suggested that activities such as those emphasized above were not "educational" and exempt within the meaning of the statute, but rather "cultural", and therefore nonexempt. However, the verb *educate* is defined as "[t]o develop and cultivate mentally or morally". *Webster's New Collegiate Dictionary* (2d ed, 1956), p 261. Similarly, the adjective *educated* is defined to be "characterized by or displaying qualities of culture and learning". *The Random House Dictionary of the English Language: The Unabridged Edition,* p 454. Even the lexicographer recognizes the difficulty of distinguishing between culture and education. *Culture* is defined as the "development or improvement of the mind by education or training". *Id.,* p 353, and

is listed as a synonym for *education* with the following explanation:

"Education, culture are often used interchangeably to mean the results of schooling. Education, however, suggests chiefly the information acquired. Culture is a mode of thought and feeling encouraged by education (the process and the acquirement). It suggests an aspiration toward, and an appreciation of, high intellectual and esthetic ideals." *Id.,* 454.

Although recognizing that questions of tax exemption are strictly construed, *Webb Academy v Grand Rapids,* 209 Mich 523; 177 NW 290 (1920); *Evanston YMCA Camp v State Tax Comm,* 369 Mich 1; 118 NW2d 818 (1962), we must not construe the instant statute so narrowly as to do violence to the Legislature's intent. As Justice COOLEY wrote in his treatise on taxation:

"When it is said that exemptions must be strictly construed in favor of the taxing power, this does not mean that if there is a possibility of a doubt it is to be at once resolved against the exemption. It simply means that if, after the application of all rules of interpretation for the purpose of ascertaining the intention of the legislature, a well founded doubt exists, then an ambiguity occurs which may be settled by the rule of strict construction. The rule of strict construction does not relieve the court of the duty of interpreting the exemption by the ordinary rules of construction in order to carry out the intention of the legislature * * *. A fair and reasonable construction of the statute or contract must always be adopted, giving the language used its ordinary meaning, and taking into consideration the purpose and spirit of the exemption as well as the public policy entertained at the time * * * when the statute was passed." 2 Cooley on Taxation (4th ed), § 674, pp 1415-1417.

See *Ann Arbor v University Cellar, Inc,* 401 Mich

279, 300-301; 258 NW2d 1 (1977) (COLEMAN, J., dissenting); *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 676; 242 NW2d 749 (1976) (COLEMAN, J., dissenting). This view has been adopted in other states, such as Nebraska, where Justice McCown held:

"The theory that the rule requiring strict construction of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. A liberal and not a harsh or strained construction is to be given to the terms 'educational,' 'religious,' and 'charitable' in order that the true intent of the constitutional and statutory provisions may be realized. *The judicial interpretation of such statute should always be reasonable." Lincoln Woman's Club v City of Lincoln,* 178 Neb 357, 363; 133 NW2d 455, 459 (1965) (emphasis added). *Evangelical Lutheran Good Samaritan Society v Ramsey County Board of Comm'rs,* 219 NW2d 900 (ND, 1974).

It is clear that the Legislature wished to promote nonprofit theaters, libraries, and charitable, educational and scientific institutions when it passed MCL 211.7(d) by providing them a property tax exemption. The Tax Tribunal committed error by interpreting the statute so narrowly as to find that cultural activities were not included within the education exception. As the Court of Appeals concluded:

"To read the statute so narrowly would obviously frustrate the intent of the Legislature. Here, as in *National Music Camp v Green Lake Twp,* 76 Mich App 608; 257 NW2d 188 (1977), a narrow reading of the legislation, appropriate a half century ago, would be invalid today. *Education, even in a traditional sense, does not stop with an end to formal schooling. The broad scope of the Ladies Literary Club's theatrical,*

*library, benevolent, charitable and educational functions confers a significant impact on a large urban area. This enables citizens, without regard to wealth or status, to partake of important cultural activities otherwise denied the populace at large.* [Emphasis added.] By whatever statutory category—theater, library, benevolent, charitable or educational—the Ladies Literary Club merits exemption under the statute. As the plaintiff organization exists *only* to make this distinct and significant contribution to the public welfare, we find that it is statutorily exempt from real property taxation." 92 Mich App 570-571.

The distinction between educational and cultural is vacuous. Plaintiff's programs are not mere social gatherings but valuable charitable and educational activities. Therefore we find that plaintiff qualifies for the tax exemption prescribed by MCL 211.7(d).

The decision of the Court of Appeals is affirmed. No costs, a public question being involved.

COLEMAN, C.J., and FITZGERALD, J., concurred with WILLIAMS, J.