On January 11, 2018, the Court heard oral argument on the application for leave to appeal the October 13, 2016 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
Markman, C.J. (concurring).
I concur in this Court's order denying leave to appeal because petitioner has failed adequately to brief the specific issue raised by this Court in its order for supplemental briefing, which was "whether Ladies Literary Club v. Grand Rapids , 409 Mich. 748, 298 N.W.2d 422 (1980), and David Walcott Kendall Memorial School v. Grand Rapids , 11 Mich.App. 231, 160 N.W.2d 778 (1968), continue to provide the appropriate test of what constitutes a 'nonprofit ... educational ... institution[ ]' under MCL 211.7n." Harmony Montessori Center v. Oak Park , 500 Mich. 1016, 895 N.W.2d 928 (2017) (alterations in original). I write separately because I believe that this Court's current interpretation of what constitutes an "educational institution" under MCL 211.7n is a "strained construction that is contrary to the Legislature's intent."
*292 SBC Health Midwest, Inc. v. Kentwood , 500 Mich. 65, 71, 894 N.W.2d 535 (2017) (quotation marks and citation omitted). In a future case, this Court should consider adopting a definition of "educational institution" that is more consistent with the plain meaning of that phrase.
The General Property Tax Act (GPTA), MCL 211.1 et seq. , provides that "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1. Section 7 of the GPTA provides property tax exemptions for properties put to particular uses. As relevant here, MCL 211.7n provides:
Real estate or personal property owned and occupied by nonprofit theater, library, educational , or scientific institutions incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incorporated is exempt from taxation under this act. In addition, real estate or personal property owned and occupied by a nonprofit organization organized under the laws of this state devoted exclusively to fostering the development of literature, music, painting, or sculpture which substantially enhances the cultural environment of a community as a whole, is available to the general public on a regular basis, and is occupied by it solely for the purposes for which the organization was incorporated is exempt from taxation under this act. [Emphasis added.]
Thus, "nonprofit educational institutions" are exempt from property taxes under the GPTA if they are "incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incorporated." Id .
In Detroit v. Detroit Commercial College , 322 Mich. 142, 153, 33 N.W.2d 737 (1948), this Court held that an institution is only entitled to a tax exemption as an "educational institution" if it "fit[s] into the general scheme of education provided by the State and supported by public taxation." This Court went on to hold that, because the institution seeking an exemption in that case was "a specialized school operated for the purpose of training its students to enter into specialized fields of employment," it was not entitled to a tax exemption as an "educational institution." Id . In David Walcott Kendall Mem Sch . ( Kendall ), the Court of Appeals addressed the Detroit Commercial College case, opining:
To apply the rule of [that] case to the present case, we must find that even if a school exists, and is created or is expanded to meet the needs of these students in a specialized major field of advanced study which substantially parallels the same major field of study as a State supported college or university, tax exemption cannot be granted for that school. It must be a "general educational institution"; not a "special school". [ Kendall , 11 Mich. App at 238, 160 N.W.2d 778.]
The Court of Appeals then noted the change in educational demands and the public need for such education since this Court's decision in 1948, and how specialized schools addressing a particular area of study might meet these needs. Id . at 238-240, 160 N.W.2d 778. In light of these developments, the Court of Appeals, in an apparent attempt to expand the scope of institutions entitled to an exemption, "formulate[d] the following test to be applied in dealing with schools of higher education" that seek an exemption as an "educational institution":
If the particular institution in issue were not in existence, then would, and could, a substantial portion of the student body *293 who now attend that school instead attend a State-supported college or university to continue their advanced education in that same major field of study? [ Id. at 240, 160 N.W.2d 778.]
In Ladies Literary Club , this Court adopted the test from Kendall :
In [ Detroit Commercial College ], our Court determined that an institution seeking an educational exemption must fit into the general scheme of education provided by the state and supported by public taxation. This proposition was refined in [ Kendall ], which declared that an educational exemption may be available to an institution otherwise within the exemption definition, if the institution makes a substantial contribution to the relief of the burden of government.
It cannot be maintained that were it not for the Ladies Literary Club's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. The club's programs do not sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption. [ Ladies Literary Club , 409 Mich. at 755-756, 298 N.W.2d 422 ; see also Mich. United Conservation Clubs v. Lansing Twp. , 423 Mich. 661, 669-670, 378 N.W.2d 737 (1985).]
Thus, this Court has held that an entity is entitled to a tax exemption as an "educational institution" if it can show (1) that it is part of the "general scheme of education provided by the state and supported by taxation" and (2) that it "makes a substantial contribution to the relief of the burden of government." Ladies Literary Club , 409 Mich. at 755-756, 298 N.W.2d 422.[1]
I believe that this standard is unsupported by the statutory text. Nothing in MCL 211.7n suggests that an entity only constitutes an "educational institution" if it "makes a substantial contribution to the relief of the burden of government." Id. This requirement effectively limits tax exemptions to those institutions that perform a quasi-governmental function by relieving the government of some public responsibility. However, the statute does not require that the institution have any particular effect on the government's burden. Rather, it only requires that the institution be "educational." That is, the relevant inquiry is the nature of the institution-whether the institution is "educational"-not the effect that the institution has upon the government's burden.
Respondent argues that a tax exemption is an "unequal removal of the burden generally placed on all landowners to share in the support of local government" and therefore must be strictly construed in favor of the taxing entity. Mich. Baptist Homes & Development Co. v. City of Ann Arbor , 396 Mich. 660, 669-670 (1976) ; see also Ladies Literary Club , 409 Mich. at 753, 298 N.W.2d 422. It further contends that because an exempted institution is no *294 longer supporting services alternatively provided by public taxation, it is reasonable to require an institution to show that its activities relieve the government's burden to provide such services. Essentially, respondent argues that the "educational institution" exemption is a sort of quid pro quo; if the institution relieves the government's burden to provide education to the public, then it receives a tax exemption. However, nothing in the language of the statute suggests such a requirement, and it is well established that the perceived purpose of a statute may not supersede the statutory text. See, e.g., Perkovic v. Zurich American Ins. Co ., 500 Mich. 44, 53, 893 N.W.2d 322 (2017) ("The Court of Appeals' reliance on the perceived purpose of the statute runs counter to the rule of statutory construction directing us to discern legislative intent from plain statutory language."). This principle applies with equal force when interpreting a statute that provides a tax exemption. As this Court has recently explained:
When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. This requires us to consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. ...
... This Court has historically required that tax exemptions be narrowly or strictly construed in favor of the government. Yet at the same time, we have held that this requirement does not permit a strained construction that is contrary to the Legislature's intent. [ SBC Health Midwest , 500 Mich. at 70-71, 894 N.W.2d 535 (quotation marks and citations omitted).]
In my judgment, engrafting a requirement that an institution relieve the government's burden in order to receive a tax exemption as an "educational institution" is a "strained construction that is contrary to the Legislature's intent." Id . at 71, 894 N.W.2d 535.
Moreover, even if the Legislature's ostensible "purpose" for exempting "educational institutions" from property tax assessment were relevant to the interpretation of MCL 211.7n, the quid pro quo relationship suggested by respondent is not the only possible justification for such an exemption. Rather, it is possible that the Legislature simply wanted to promote the existence of "educational institutions" by lessening the financial burden on them. This Court has long recognized the benefits derived from providing tax exemptions to "educational institutions":
We need not, in our history, go beyond the ordinance of 1787, which declares that-
"Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."
Exemption from taxation is the only form of encouragement that our laws provide. ... The advantage of multiplying the facilities of learning has been rightly regarded as worth to any decent community very much more than can be counted in money. [ Detroit Home & Day Sch. v. Detroit , 76 Mich. 521, 523-524, 43 N.W. 593 (1889).]
Similarly, the United States Supreme Court has recognized the role of tax exemptions in promoting the development of "educational institutions":
New York, in common with the other States, has determined that certain entities that exist in a harmonious relationship to the community at large, and that foster its "moral or mental improvement," should not be inhibited in their activities by property taxation or the *295 hazard of loss of those properties for nonpayment of taxes. [ Walz v. Tax Comm. of City of New York , 397 U.S. 664, 672, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).]
This alternative understanding of the "purpose" for providing a tax exemption to "educational institutions" is supported by the fact that MCL 211.7n also provides a tax exemption to nonprofit theaters, and it is difficult to see how those institutions relieve any governmental burden. Therefore, even if the Legislature's "purpose" for providing a property tax exemption were relevant to defining an "educational institution" under MCL 211.7n, I see no reason why that "purpose" is limited to the quid pro quo relationship advocated by respondent.
I also find no statutory basis for concluding that an entity is only an educational institution if it fits within the "general scheme of education provided by the state and supported by public taxation ." Ladies Literary Club , 409 Mich. at 755, 298 N.W.2d 422 (emphasis added). While there is a strong and proud tradition of publicly funded education both in Michigan and in the United States as a whole, there is a similarly proud tradition of private educational institutions. Indeed, "tax exemption for private educational institutions extends to the beginning of colonial America." Colombo, Why is Harvard Tax-Exempt? (And Other Mysteries of Tax Exemption for Private Educational Institutions) , 35 Ariz. L. Rev. 841, 844 (1993). There is no statutory basis for concluding that an "educational institution" must be part of the "general scheme of education provided by the state " rather than a part of the general scheme of education provided by the state and private institutions.
For these reasons, I believe that, in a more appropriate case, this Court should reconsider what constitutes an "educational institution" under MCL 211.7n. While I do not purport to articulate a definitive standard in this statement, I share a few initial observations that I believe warrant further consideration by this Court. Taken in isolation, the definition of the word "educational" could be broadly interpreted to provide a property tax exemption for most properties, which would clearly be inconsistent with the statutory scheme.[2] However, when viewed in the context of MCL 211.7n as a whole, I believe that a more reasonable interpretation emerges. MCL 211.7n does not only provide a tax exemption for "educational institutions," but also for theaters, libraries, scientific institutions, and properties "devoted exclusively to fostering the development of literature, music, painting, or sculpture which substantially enhances the cultural environment of a community as a whole, [and] is available to the general public on a regular basis...." "This Court must avoid an interpretation that would render any part of the statute nugatory." People v. Rea , 500 Mich. 422, 433, 902 N.W.2d 362 (2017). Accordingly, it appears that theaters, libraries, scientific institutions, and properties devoted to promoting cultural development will generally not constitute "educational institutions," even if they are "educational" in the broadest sense of the term.
In addition, the history of the American educational experience itself provides at least some guidance as to the meaning of an "educational institution." There are certain *296 kinds of institutions that, in the American experience, have traditionally been viewed as "educational institutions." Such institutions include public schools,[3] parochial schools,[4] liberal arts colleges,[5] graduate programs,[6] and vocational schools.[7] The common thread among these institutions is that they instruct students in order to promote intellectual growth or employment-related skills. By contrast, other kinds of institutions that "educate" in the broadest sense, such as baby-sitting programs, zoos, dance academies, and athletic teams, are not, in common parlance, generally considered to be "educational institutions." Thus, it appears to me that an "educational institution" must be of a kind that, in the perspective of the overall American experience, has been traditionally viewed as an institution that instructs students to promote intellectual growth or employment related skills. But these are all tentative ruminations and speculations, and await specific development in a future case.
As the Supreme Court of New Hampshire aptly noted when defining an "educational institution" under its own tax exemption statute, "the construction of a brightline test is impossible; each case will necessarily depend on its own peculiar facts." New Canaan Academy, Inc. v. Town of Canaan , 122 N.H. 134, 137, 441 A.2d 1174 (1982). Thus, it is incumbent upon this Court, as the highest court in this state, to provide an appropriate framework for determining whether an entity constitutes an "educational institution" that is entitled to a property tax exemption. In my judgment, the current framework is clearly contrary to the statutory text and imposes an unwarranted burden on an institution seeking a tax exemption to show that it performs a quasi-governmental function. I welcome the opportunity in a future case to formulate a new standard for what constitutes an "educational institution" that is more consistent with the plain meaning of that phrase and within the American educational tradition.

This Court has never clearly explained whether an entity is entitled to an exemption if it satisfies either of these requirements, or whether it is only entitled to an exemption if it satisfies both of these requirements. However, multiple Court of Appeals decisions have cited Ladies Literary Club for the proposition that an entity is only entitled to an exemption if it satisfies both of these requirements. See, e.g., Harmony Montessori Ctr. v. Oak Park , unpublished per curiam opinion of the Court of Appeals, issued February 18, 2014 (Docket No. 312856), p. 2, 2014 WL 667792 ; Telluride Ass'n Inc. v. City of Ann Arbor , unpublished per curiam opinion of the Court of Appeals, issued July 16, 2013 (Docket Nos. 304735 and 305239), pp. 5-6, 2013 WL 3717798 ; Mich. Laborers' Training & Apprenticeship Fund v. Breitung Twp. , unpublished per curiam opinion of the Court of Appeals, issued October 23, 2012 (Docket No. 303723), p. 3, 2012 WL 5233635.

Merriam-Webster's Collegiate Dictionary defines "educate"-the verb form of "educational"-as "1 a : to provide schooling for < chose to [educate] their children at home> b : to train by formal instruction and supervised practice esp. in a skill, trade, or profession 2 a : to develop mentally, morally, or aesthetically esp. by instruction b : to provide with information[.]"

This category would also seem to include "public school academies," i.e., charter schools. See Council of Orgs. & Others for Ed. About Parochiaid, Inc. v. Governor , 455 Mich. 557, 576, 566 N.W.2d 208 (1997) ("[W]e find that public school academies are 'public schools.' ").

See Walz , 397 U.S. at 703, 90 S.Ct. 1409 (Douglas, J., dissenting) ("Parochial schools teach religion; yet they are also educational institutions offering courses competitive with public schools. They prepare students for the professions and for activities in all walks of life. Education in the secular sense [is] combined with religious indoctrination at ... parochial schools....").

See generally Bauer, Small Liberal Arts Colleges, Fraternities, and Antitrust: Rethinking Hamilton College , 53 Cath. U. L. Rev. 347, 354-357 (2004) (describing the origin and expansion of American liberal arts colleges).

See generally Kimball, The Context of Graduate Degrees at Harvard Law School Under Dean Erwin N. Griswold, 1946-1967, Commentary on Gail Hupper's Educational Ambivalence: The Rise of a Foreign-Student Doctorate in Law , 49 New Eng. L. Rev. 449, 450-455 (2015) (describing the development of graduate programs throughout the United States from 1870 to 1970).

See James, Predatory Ed: The Conflict between Public Good and For-Profit Higher Education , 38 JC & UL 45, 104 n 322 (2011) ("Vocational education has had a long history in the United States, starting in the form of apprenticeships in the early colonial period. Land-grant institutions continued this tradition, with an early mission of training farmers and home-economists. Today, vocational training is offered at high schools, training centers, and two and four-year colleges and universities ....").