KALAMAZOO NATURE CENTER, INC v COOPER TOWNSHIP

Docket Nos. 46924, 46925. Submitted February 10, 1981, at Lansing.— Decided March 17, 1981.

Kalamazoo Nature Center, Inc. (hereinafter KNC) is a nonprofit corporation which was organized to promote a better understanding and appreciation of our natural surroundings, to sponsor educational programs and ecological research, and to maintain and set aside natural areas for interpretation of natural history and for education in the philosophy of wise use of natural resources. The KNC owns a number of parcels of land surrounding its Cooper's Glen parcel upon which is located the Interpretive Center from which it conducts, for the benefit of the public, ecology and environmental education and land conservation programs. Cooper Township refused to grant tax exempt status to two parcels of land owned by the KNC upon which were located dwellings occupied as residences by employees of KNC and to a 31-acre parcel of vacant land which was being maintained by the KNC in its natural state. The KNC appealed to the Michigan Tax Tribunal the denial of tax exempt status to these parcels of land. The Michigan Tax Tribunal affirmed the denial of the tax exempt status to these parcels, finding that the dwellings and surrounding curtilages were supplied to the KNC employees as private residences with those employees receiving lower salaries in lieu of paying rent and that the 31-acre parcel was not being occupied by the KNC within the meaning of the exemption provisions of the General Property Tax Act, holding that to occupy land within the meaning of the exemption provisions required actual frequent physical use of the land. The KNC appeals. *Held:*

1. Although the KNC undertakes educational programs, the

REFERENCES FOR POINTS IN HEADNOTES

[1] 71 Am Jur 2d, State and Local Taxation §§ 383, 480.
[2] 72 Am Jur 2d, State and Local Taxation §§ 718, 787.
[3] 71 Am Jur 2d, State and Local Taxation § 326.
[4] 71 Am Jur 2d, State and Local Taxation §§ 362, 370.
When is corporations, community chest, fund, foundation, or club "organized and operated exclusively" for charitable or other exempt purposes under Internal Revenue Code. 69 ALR2d 871.

KNC is not an educational institution within the meaning of the exemption provisions of the General Property Tax Act. Any exemption from taxation of property owned by the KNC is rather governed by the provisions relating to charitable organizations.

2. Findings of fact by the Michigan Tax Tribunal are binding on appeal in the absence of a showing of fraud, an error of law, or the adoption of a wrong principle. Since tax exemption statutes are strictly construed in favor of the taxing unit, the Court of Appeals finds no error in the tribunal's denial of the tax exempt status to the two dwellings and the surrounding curtilages.

3. The statutory requirement that tax exempt status is available only to charitable organizations which occupy the land for purposes for which the organizations were incorporated does not require physical use of the land where such absence of physical use is consistent with the purposes for which the organizations were incorporated. By holding the 31-acre parcel without permitting entry upon the same, the KNC sought to maintain that parcel in its natural state and to provide a watershed for the stream crossing its other lands free from pollution. Such uses are consistent with the purposes for which the KNC was incorporated. The absence of physical use of that parcel does not constitute nonoccupation of the parcel under these circumstances, since the use, albeit a nonphysical use of the land, was a use consistent with the charitable purposes for which the KNC was incorporated.

Reversed in part; affirmed in part.

1. TAXATION — REAL PROPERTY — EXEMPTIONS FROM TAXATION — EDUCATIONAL INSTITUTION — STATUTES.

The Kalamazoo Nature Center is not an educational institution within the meaning and intent of tax exemption provisions for real estate of the General Property Tax Act (MCL 211.7; MSA 7.7).

2. TAXATION — APPEAL — TAX TRIBUNAL — SCOPE OF REVIEW.

Factual determinations of the State Tax Tribunal are binding on appeal absent fraud, error of law or adoption of a wrong principle.

3. TAXATION — REAL PROPERTY — EXEMPTIONS FROM TAXATION — JUDICIAL CONSTRUCTION.

Statutory exemptions from real property taxation are to be strictly construed in favor of the taxing unit.

4. TAXATION — EXEMPTIONS FROM TAXATION — OCCUPATION OF LAND
    — USE OF LAND — STATUTES.
    The statutory provision that real property which is owned and
    occupied by a charitable organization and is occupied solely for
    the purposes for which the charitable organization was incorpo-
    rated shall be exempt from taxation does not require physical
    use of that land where the land is being held to preserve its
    natural state and to protect from pollution the watershed
    flowing from such land and where such uses foster the purposes
    for which the charitable organization was incorporated (MCL
    211.7; MSA 7.7).

*Fox, Thompson, Morris, Stover & O'Connor*, for
petitioner.

*Bauckham, Reed, Lang, Schaefer & Travis, P.C.*,
for respondent.

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN,
JJ.

PER CURIAM. Petitioner, Kalamazoo Nature Cen-
ter, Inc., appeals of right from a June 26, 1979,
judgment of the Michigan Tax Tribunal denying
tax exemption status on two residences and 31
acres of vacant land owned by petitioner. The
tribunal based its denial of exemption on grounds
that petitioner does not occupy the parcels solely
for the purposes for which it was incorporated.

Kalamazoo Nature Center, Inc. (KNC), is a
Michigan nonprofit corporation organized for the
following purposes:

"To develop in people and especially children a better
understanding and appreciation of our natural sur-
roundings and of the problems of wise management of
our nature resources;

\*   \*   \*

"To cooperate with other agencies, organizations and

institutions concerned with natural history and conservation;

"To sponsor and participate in service and educational programs, ecological research, lectures and classroom teaching;

"To maintain for all time the area known as 'Cooper's Glen' and other natural areas set aside for interpretation of natural history and for education in philosophy of wise use of natural resources."

It is supported entirely by voluntary contributions, membership, admission and service fees, and sales in its Natural History Shop. It presently has more than 8,000 members. Volunteers contribute over 10,000 hours per year and some 100,000 people use its lands and facilities, including 15,000 to 20,000 children in the formal school program. The membership elects a policy-making board which appoints an executive director who, with 16 full-time staff members and part-time volunteers, conducts ecology and environmental education and land conservancy programs for the benefit of the public.

Between the date of its incorporation and July 22, 1977, the KNC acquired 19 parcels of real property, totaling some 515 acres, situated five miles north of the City of Kalamazoo. Most of the property, including the attractive geodesic-domed Interpretive Center building, is located east of North Westnedge Avenue in what is known as the Cooper's Glen area. That property is tax exempt and is not a subject of this suit. Lying west of North Westnedge Avenue are some eight parcels, parts of which are identified in the hearing record as units 030 and 010 and are the subjects of this appeal. Unit 030 is one acre of parcel 15 and is known as the Thole property. It consists of a residence dwelling and its one-acre curtilage. It was conveyed to KNC in 1973 by land contract

and since May 1971 has been occupied by Diane
Worden, a KNC employee. Unit 010, known as the
Earle property, consists of a residence dwelling
and its curtilage of nine acres plus approximately
31 acres of low ground, called pristine or fragile
land and through which runs a stream called
"Trout Run". Commencing October, 1977, the resi-
dence has been occupied by Douglas Wood, a KNC
employee. Prior to 1975, the 31 acres was used as
a hunting and dumping ground. Since 1975, it has
stood vacant and has not been open to the public.
However, the public is brought to the edge of the
land but is not allowed to enter. Tax years 1976,
1977, and 1978 are involved in this suit. The Tax
Tribunal denied exempt status for both residences
and the 31 acres of vacant land.

Three issues are raised on appeal: (1) Is peti-
tioner primarily an educational institution as dis-
tinguished from a charitable institution? (2) Did
the Tax Tribunal err in ruling that the residences
on units 030 and 010 were not entitled to exemp-
tion? (3) Was the vacant 31 acres of unit 010 being
used solely for the purposes for which petitioner
was incorporated?

## I

The Tax Tribunal ruled that KNC was a charita-
ble and benevolent association, but not an educa-
tional or scientific institution. Under MCL 211.7;
MSA 7.7, real estate owned and occupied by either
a nonprofit educational or charitable institution is
exempt from taxation if occupied by the institu-
tion solely for the purposes for which the institu-
tion was incorporated. Thus, at first blush it would
appear that it would make no difference whether
KNC was determined to be a charitable or an
educational institution. However, in a footnote

appearing in *National Music Camp v Green Lake Twp,* 76 Mich App 608, 611; 257 NW2d 188 (1977), this Court stated that the quantum of use test laid down in *Lake Louise Christian Community v Hudson Twp,* 10 Mich App 573; 159 NW2d 849 (1968), would not apply to educational organizations. As a consequence, it was held that 92 acres of undisturbed dunes lying on Lake Michigan owned by the National Music Camp was exempt from taxation. Understandably, counsel for petitioner desires to have his client determined to be an educational institution.

Beyond doubt, KNC conducts a wide range of activities of great benefit to the community and which are predominently educational in nature. In this respect, KNC's programs resemble what the Court found were basically educational functions in *Ladies Club of Grand Rapids v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980), and *Circle Pines Center v Orangeville Twp,* 103 Mich App 593; 302 NW2d 917 (1981). Yet in neither of those cases did the Court hold that the petitioner was an "educational institution".

" 'It cannot be maintained that were it not for the Ladies Literary Club's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. The club's programs do not sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption.' *Ladies Club, supra,* 756.

"While CPC's activities focus on cooperative education and are both commendable and of benefit to the participants, it cannot be said that such programs 'sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption'. Petitioner's reliance on *National Music Camp v Green Lake Twp,* 76 Mich App 608; 257 NW2d 188 (1977), is misplaced. In that case, there was no

dispute over petitioner's status as an educational institution. Unlike petitioner in the instant case, the Interlochen facility was a recognized degree-conferring institution. The primary issue there was whether certain property owned by petitioner was used for educational purposes. Therefore, we hold that petitioner, CPC, is not an educational institution within the meaning of MCL 211.7; MSA 7.7." *Circle Pines, supra,* 598

We recognize that KNC operates as an educational center in environmental sciences, conducting classes for adults and schoolchildren and presenting orientation lectures at the Interpretive Center. We recognize too that petitioner's facilities are used by school systems throughout the state and that workshops are conducted for teachers. Nevertheless, we do not believe petitioner's activities "sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption". In this connection, we note that the articles of incorporation of KNC, as amended, contain the following limitation upon the purposes of the corporation.

"Section 2. Limitations.
"All of the above provisions of this article are for the personal and cultural improvement of the participants and the community, but in no event shall such provisions be deemed to permit the conducting of a school, academy, seminary, college, or other institution of learning pursuant to § 450.170 *et seq.,* of the Compiled Laws of 1948 of the State of Michigan."

## II

Should tax exemption be granted the residences on the Thole property in unit 030 and the Earle property on unit 010? As noted earlier in this opinion, each residence is occupied by a KNC

employee. Petitioner contends that the presence of an employee is necessary for surveillance purposes to protect the property from ecological destruction or damage from trespassers and that the use of the residences for such purposes supports petitioner's corporate purposes. The Tax Tribunal held that KNC was not occupying the dwellings *solely* for the purposes for which it was incorporated for three reasons. First, since Mr. Wood and Mrs. Worden were using the dwellings as private residences, KNC was not occupying the dwellings. Second, the occupancies were in fact rentals. Third, the value of the houses as points for surveillance was negligible.

The evidence revealed that Mr. Wood and Mrs. Worden occupy the houses rent-free as personal residences. Both employees accept reduced wages for the privilege of occupying the respective dwellings. While the arrangements are not labeled as rentals, a monetary benefit nonetheless flows to petitioner from its employees as a result of their occupancies. Neither residence is open to the public. In a period of eight years, Mrs. Worden has expelled only three trespassers. Mr. Wood could recall only one instance when he had reason to believe that there had been a trespasser on KNC land.

Factual determinations of the Tax Tribunal are binding upon appellate review unless there is fraud, error of law or adoption of a wrong principle. *Michigan National Bank, Lansing v Lansing,* 96 Mich App 551, 553; 293 NW2d 626 (1980). Further, exemption statutes are to be strictly construed in favor of the taxing unit. *Asher Student Foundation v East Lansing,* 88 Mich App 568, 571; 278 NW2d 675 (1979), *lv den* 406 Mich 999 (1979). In view of the findings of the Tax Tribunal that

surveillance was at best minimal, that essentially the houses were being used as private residences for which the owner received rent in the form of a lower salary to the employee, and bearing in mind that exemption statutes are to be strictly construed, we find no error in the Tax Tribunal's denial of tax exemption for the two residences and surrounding curtilage.

## III

In order to qualify for tax exempt status under MCL 211.7, the real estate of a charitable organization must "be owned and *occupied* by the exemption claimant" and *"occupied* solely for the purposes for which claimant was incorporated". *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944), *Ladies Literary Club, supra, Circle Pines Center, supra.* In its opinion, the Tax Tribunal ruled that the word "occupy" requires "actual physical use of such property by the claimant which is frequent". The tribunal observed that, since visitors were not allowed on the property, it was not being physically used by petitioner except for the expulsion of trespassers and that such use was not frequent.

However, both in the record and at oral argument on appeal, testimony was introduced to the effect that during the summer and fall the staff conducts tours on a daily basis for visitors, particularly for daycampers, along the edges of the preserved 31-acre parcel. The visitors view and observe the preserved area so that they may experience what land in its preserved and natural state looks like. Though the 31 acres is not physically entered upon, it nevertheless is *"used"* as a demonstration project. Thus, the situation in the instant case is quite different from the usual situa-

tion occurring when tracts of land are fenced off and the property is not used for any purpose whatsoever. Here the property, though not physically intruded upon, is used to develop "a better understanding and appreciation of our natural surroundings and of the problems of wise management of our nature resources". This is precisely one of the four purposes for which KNC was incorporated.

There is a second way in which the 31-acre parcel is "used", albeit passively, for a purpose consistent with petitioner's incorporation. KNC's principal asset is the Cooper's Glen forest area lying east of North Westnedge Avenue and into which Trout Run flows on its way to the Kalamazoo River. The record discloses that the subject 31-acre parcel is the major part of the watershed of Trout Run. If this area is opened to the public, Trout Run could be damaged, and, in turn, the ecological integrity of the Cooper's Glen area, on which petitioner's Interpretive Center building is located, would be compromised. One of the purposes for which KNC was incorporated was the maintenance for all time of the Cooper's Glen area.

While we agree with the Tax Tribunal that the granting of a tax exemption requires that the lands be used for the purposes for which the exemption is sought and further agree that in most instances physical use of the property is demanded, we cannot agree that in the case before us *physical* use is a condition precedent to exemption. In terms of contemporary environmentalism, the best "occupancy" may be visual, educational, or other demonstrative type occupancy. Nothing in the statute requires physical use. The Tax Tribunal's ruling, if followed, places petitioner in the

position of having to open its watershed to the public and thus expose Trout Run to likely pollution from the metropolitan area only a few miles distant. The "physical use" test is inconsistent with the sound land management policies demanded by contemporary environmentalism.

In our opinion, KNC is "using" the subject 31-acre area in the optimum manner consistent with the wise management of the area's natural resources. The acquisition of the major portion of the watershed area and the use of it as a demonstrative unit is protective of the downstream ecological area and is compatible with the educational purposes set forth in KNC's articles of incorporation. Further, petitioner's use of the preserved area is not occasional or *de minimus*. The educational function, where daycampers and students are brought to the edge of the area and outdoor lectures are conducted demonstrating proper land use, occurs all during the summer and fall months. The second mentioned use, protecting the watershed from pollution, is by its very nature year round and constant. Thus, the frequency and quantum of use test laid down in *Lake Louise Christian Community, supra,* 580, is not a bar to exempt status in the instant case. Accordingly, we find that petitioner's use of the preserved portion of unit 010 is solely for the purpose for which petitioner was incorporated and is incidental to and in support of its corporate purposes.

The judgment of the Tax Tribunal is affirmed in part, and reversed in part in accordance with this opinion. No costs, a public question being involved and neither party having prevailed in full.