ASPETUCK LAND TRUST, INC. *v.* CITY
OF BRIDGEPORT

Superior Court, Judicial District of Fairfield
File No. CV-06-4016847S

Memorandum filed March 3, 2008

*Guidera George Law Offices*, for the plaintiff.

*Office of city attorney*, for the defendant.

COHN, J. The plaintiff, the Aspetuck Land Trust, Inc., brought this tax appeal on June 2, 2006, alleging that the city of Bridgeport (city), through its assessor, had wrongfully denied the plaintiff a charitable exemption under General Statutes § 12-81 (7) for a tract of land known as the Great Salt Marsh Island (island). The plaintiff's complaint alleged that it owned the property on October 1, 2005, and that the assessor had determined that the property was liable for taxation for the tax year 2005. The plaintiff alleged that it was organized exclusively for charitable purposes, and one of these purposes was the preservation of real estate in its natural and undeveloped condition for the benefit and use of the public. The plaintiff further alleged that although the island property was being held for a charitable purpose, the assessor and the city's board of assessment appeals (board) had denied the required charitable exemption. The plaintiff appealed pursuant to General Statutes § 12-89 for relief from taxation for the tax year 2005.

The court conducted a nonjury trial in this matter on December 28, 2007, and now makes the following findings of fact: 1. The plaintiff is a Connecticut nonprofit corporation that has been recognized by the Internal Revenue Service and the state department of

revenue services as a "§ 501 (c) (3)" charitable organization.

2. The corporation owns 1750 acres in Easton, Weston, Westport, Wilton, Redding, Fairfield and Bridgeport.

3. The corporation is under the control of a board of directors. Membership in the corporation is obtained by making a donation. The board has employed Bruce LePage as executive director for the past fifteen years.

4. The corporation's certificate of incorporation provides that one purpose is to "engage in and otherwise promote . . . the preservation of natural resources of the State of Connecticut, including water resources, marshland, swamp, woodland and open spaces, and the plant and animal life therein and the preservation of unique historical and scenic sites." A second purpose is to "engage in and otherwise promote the scientific study of and to educate the public regarding local natural resources including plants, animals, birds and other wildlife." A third purpose is to "use all property held or controlled by this corporation and the net earnings thereof in the United States of America for the benefit of all the inhabitants of the State of Connecticut for the conservational, educational and scientific purposes for which the corporation is formed . . . ."

5. The bylaws of the corporation have similar statements of purpose. In addition, a further articulated purpose is "to promote the beneficial undeveloped use of acquired real estate for forest land, wildlife preserves, parks, greenbelts and other similar uses."

6. On September 1, 2005, the plaintiff purchased from the town of Fairfield for $45,000, one-half of the subject island located in the city, at the mouth of Ash Creek where it empties into Long Island Sound. Fairfield continues to own the other half of the island.

7. The island is subject to tidal floods and is almost fully covered at high tide. The surface of the island is covered with spartina grass or "salt hay." There are rare birds on the island, including ospreys and yellow crested night herons.

8. The island may be observed from the shore. A map shows that it may be seen from Gilman Street and Grovers Avenue.

9. The plaintiff does not permit development of the island and intends to retain the island for passive recreation—open space and preservation of natural habitat. The plaintiff has no objection to persons visiting the island by boat, so long as visitors do not disturb the natural conditions. The plaintiff has not encouraged visits, and LePage, the executive director, has never seen anyone attempt a visit.

10. The plaintiff aims to provide passive recreation, protect natural habitats of fish, wildlife and plants, as well as a rare ecosystem, and have open space available in our increasingly developed society.

11. In October, 2006, the plaintiff sponsored a ninety minute walk led by Milan Bull, a scientist with the Fairfield Audubon Society, that took thirty to forty people along the shore on Gilman Street to observe the island. Bull gave a lecture about the island's spartina grass and bird life. Observation of newly born ospreys on the island was made by binoculars. The historic "old corduroy road" just north of the island was also observed.

12. The plaintiff has not held any other organized activity with regard to the island. For example, there have been no school trips made, no literature distributed or postings about the island on the plaintiff's Internet site. However, LePage plans to create more publicity about the island in the near future.

13. The plaintiff is not making a claim for a tax exemption under the "open space" provisions of General Statutes § 12-107a et seq., but it is making a claim as a charitable use under § 12-81 (7).

14. On September 29, 2005, LePage applied to the city's tax assessor for a tax exemption on a form entitled "Supplemental Tax Exemption Return." This document was not notarized.

15. A document entitled "Tax Exempt Return" was filed in March, 2006, again requesting a tax exemption for charitable use.

16. The city's assessor denied the tax exemption for the grand list of 2005, and this denial was further denied by the board on April 6, 2006.[1]

17. This action was brought within two months of the denial by the board on June 2, 2006.

The city claims that the action cannot proceed without proof by the plaintiff of aggrievement, citing *Konover* v. *West Hartford*, 242 Conn. 727, 699 A.2d 158 (1997). The court has found, however, on the basis of the testimony of the plaintiff's executive director, LePage, that both the city's assessor and the board rejected the claim for tax exemption on the grand list of 2005. Lack of further documentation should not stand in the way of reaching the merits of the appeal. See *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999) (relative to subject matter jurisdiction, court is to indulge in presumptions favorable to plaintiff).[2]

---

[1] The transcript of the hearing supports this finding. The court notes that further specifics on dates are set forth only in the plaintiff's brief and were not introduced at trial.

[2] The city also argues that the form filed by the executive director requesting an exemption for 2005 was not notarized and that this lack of compliance defeats this action. The city, however, does not cite any statute requiring that the form be notarized. The city also contends that the plaintiff was obliged to submit a "quadrennial report" under General Statutes § 12-87a, but this section applies to years subsequent to the first year the property is owned by the charitable organization. See *Hartford Hospital* v. *Board of Tax Review*, 158 Conn. 138, 256 A.2d 234 (1969).

Turning to the merits, § 12-81 (7) exempts from taxation the real property of a corporation held exclusively for scientific, educational, literary, historical or charitable purposes. Regarding this exemption from taxation, our Supreme Court has stated: "The general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption. . . . Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms. . . . It is also well settled that the burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption. . . . We strictly construe such statutory exemptions because [e]xemption from taxation is the equivalent of an appropriation of public funds, because the burden of the tax is lifted from the back of the potential taxpayer who is exempted and shifted to the backs of others. . . . The owners of tax-exempt property in the community derive the same benefits from government as other property owners but pay no property taxes for those benefits." (Citations omitted; internal quotation marks omitted.) *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213, 220, 811 A.2d 1277 (2002).

The court in *Fanny J. Crosby Memorial, Inc.*, also emphasized that "whether a property is tax-exempt is a fact intensive inquiry." Id. The plaintiff must prove that the real estate belongs to or is held in trust for a tax exempt organization, that the real estate is being held for one of the purposes stated in the § 12-81 list of exemptions and that it does not produce any income to the organization. Id., 220–21.

The facts as found by the court confirm that the subject island is owned by a tax exempt organization and does not produce any income to the organization. The resolution of the case turns on whether the taxed premises is "held" or used for "one of the purposes"

stated in the statute. The plaintiff claims that the property is being held for open space or conservation purposes that tend "to promote the well-doing and the well-being of social man." *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan*, 147 Conn. 510, 515, 162 A.2d 700 (1960).

There is no Connecticut case on point on this issue. Decisions from other states support the plaintiff to the extent that a goal of preserving land in its natural state has aspects of a charitable use, but these cases also support the city's argument that mere nonuse is not sufficient to claim a charitable deduction.[3]

*Kalamazoo Nature Center* v. *Cooper Township*, 104 Mich. App. 657, 661, 305 N.W.2d 283, 285 (1981), concerned "31 acres of low ground, called pristine or fragile land . . . through which runs a stream called 'Trout Run'. . . . Since 1975, it has stood vacant and has not been open to the public. However, the public is brought to the edge of the land but is not allowed to enter." The Michigan Tax Tribunal had ruled that an exemption should be denied because "it was not being physically used by [the plaintiff] except for the expulsion of trespassers and that such use was not frequent." Id., 665.

The court continued: "However, both in the record and at oral argument on appeal, testimony was introduced to the effect that during the summer and fall the staff conducts tours on a daily basis for visitors, particularly for daycampers, along the edges of the preserved 31-acre parcel. The visitors view and observe

---

[3] In a case involving athletic facilities used from time to time as a rowing camp by Harvard University, our Supreme Court stated: "It is the nature of the use, and not the frequency of use and the number of students, which is controlling. Of course, the property in question must actually be used in order to qualify for an exemption. If [the premises] had not been used, or if the use had been abandoned prior to the years in question, the property would not be eligible for tax exemption." *Red Top, Inc.* v. *Board of Tax Review*, 181 Conn. 343, 353, 435 A.2d 364 (1980).

the preserved area so that they may experience what land in its preserved and natural state looks like. Though the 31 acres is not physically entered upon, it nevertheless is '*used*' as a demonstration project. Thus, the situation in the instant case is quite different from the usual situation occurring when tracts of land are fenced off and the property is not used for any purpose whatsoever. Here the property, though not physically intruded upon, is used to develop 'a better understanding and appreciation of our natural surroundings and of the problems of wise management of our nature resources'. This is precisely one of the four purposes for which [the plaintiff] was incorporated." (Emphasis in original.) Id., 665–66. Under these circumstances, the exemption was allowed as to the thirty-one acres, even though the property was not actually entered. Id., 663–64.

Similarly, in *Adirondack Land Trust, Inc.* v. *Putnam Assessor*, 203 App. Div. 2d 861, 861–62, 611 N.Y.S.2d 332, appeal denied, 84 N.Y.2d 809, 645 N.E.2d 1218, 621 N.Y.S.2d 518 (1994), the plaintiff[4] "purchased a single parcel of real property comprising approximately 168 acres of undeveloped land, with roughly 0.8 mile of shoreline on the east shore of Lake George, in the Town of Putnam, Washington County. The parcel has no reasonable means of overland access—although [the plaintiff] acquired, along with the property, a right-of-way across neighboring property, it has not yet developed a road or trail to take advantage of this right—but it is accessible by boat. Shortly after completing the purchase, [the plaintiff] removed several 'no trespassing' signs and posted new signs along the shoreline identifying the property as a nature sanctuary and advising

---

[4] The plaintiff in *Adirondack Land Trust, Inc.*, had goals identical to that of the present plaintiff—it was a New York nonprofit corporation organized to conserve, maintain and enhance the "physical and aesthetic environment, natural resources and economy of the Adirondack area." *Adirondack Land Trust, Inc.* v. *Putnam Assessor*, supra, 203 App. Div. 2d 861.

that certain activities were prohibited thereon. [The plaintiff] also embarked upon an extensive publicity campaign to inform the public of the purchase, and to promote the fact that the property would henceforth be open for hiking and other compatible activity. Public gatherings were held, with over 600 invitations sent to area residents, and a press release was issued to 'all major newspapers in New York State', as well as to all local papers."

The town denied the charitable tax exemption. Id., 862. It claimed that the property could not be used "in any meaningful way because of [the plaintiff's] failure to create overland access, to build a dock[5] or to establish hiking trails . . . ." Id.

The appellate court rejected this approach. "Use of property as a wildlife or nature sanctuary is a use in keeping with charitable purposes. . . . Furthermore, it is recognized that 'restricted access to and use of a wildlife sanctuary is essential lest the sanctuary fail of its purpose'. . . . That the restrictions are necessitated by the character of the land itself, rather than by the owner's affirmative acts, is irrelevant, if they are not inconsistent with maintaining the habitat in its natural state and protecting the wildlife—which, on [the plaintiff's] land, includes a threatened species, the timber rattlesnake—from undue interference." Id.

The court concluded that the plaintiff was not offering its members special privileges or claiming the exemption as a pretext to shield itself from taxation. Id., 862–63. "To the contrary, it has widely publicized the fact that the property is accessible by boat and is available for activities (e.g., organized canoe trips to the site) that are in keeping with its status as a nature

---

[5] In the present case, the city asked the plaintiff to build a boardwalk or walkway out to the island as a condition to obtain the charitable exemption.

preserve. . . . There is, accordingly, no basis for denial of the tax exemption sought." Id., 863.

Finally, two cases from the Supreme Judicial Court of Maine are on point. In *Cushing Nature & Preservation Center* v. *Cushing,* 785 A.2d 342, 344–45 (Me. 2001), summary judgment in favor of the defendant town was reversed where 400 acres of coastal property had minimal use—six days by twenty girls participating in a variety of educational and recreational activities; a four day science camp; weekend use by scouts; nature walks and a study of deer and Lyme disease. The Supreme Judicial Court stated that, if proven, such activities would allow for a tax exemption.[6]

Finally, regarding activities on preserved acreage, in *Christian Fellowship & Renewal Center* v. *Limington,* 896 A.2d 287 (Me. 2006), the Supreme Judicial Court of Maine stated: "Addressing intensity of use, we have held that recreation and relaxation activities—even very minimal activities—may qualify as charitable activities supporting a charitable exemption. . . . For exemption qualification purposes, the fact of a charitable use, not its intensity, is what qualifies for the exemption. . . . A charitable use may qualify a property for exemption, even if the property has little human use for recreation or relaxation." (Citations omitted.) Id., 296.

These cases indicate that land preservation is a charitable use so long as it is coupled with some minimal educational or other charitable activity on or near the property location. For the tax year 2005, the only year before the court in this case, the plaintiff has failed to meet its burden of proof. It purchased the property only

---

[6] The Supreme Judicial Court of Maine left undecided the trial court's conclusion that land preservation cannot constitute a charitable use, as the Maine legislature had adopted a farm and open space tax law. The plaintiff had not presented any facts regarding the open space law. The city in the present case has also raised this issue in its brief, citing General Statutes § 12-107a et seq. The court also declines to address this issue.

one month before October 1, 2005, but it did not hold its bird walk until October 2006. At the time of the hearing in this case, the plaintiff had not issued any publicity about the island, had not featured the island in any pamphlets or on its Internet site and no school groups had visited Gilman Street.

Under the facts of this case, the court holds that for the tax year 2005, the plaintiff has failed to prove that it is entitled to a charitable exemption from taxation as to the premises in question. Therefore, judgment shall enter for the defendant city, without costs to either party.