MICHIGAN UNITED CONSERVATION CLUBS v LANSING
TOWNSHIP

Docket No. 60105. Submitted November 4, 1982, at Lansing.—Decided
September 26, 1983. Leave to appeal applied for.

Petitioner, Michigan United Conservation Clubs (MUCC), a non-
profit corporation composed of individuals and local affiliate
groups, is an educational and a political organization concerned
with the furtherance and advancement of natural resource
conservation, environmental protection, the harvest and use of
surplus wildlife and other renewable resources, the right to
own, keep, and bear arms and other related purposes and
objects. MUCC claimed an exemption from ad valorem property
taxes for the tax years 1980 and 1981 for property containing
its office building and warehouse located in Lansing Township
following the assessment of such property by respondent, Lans-
ing Township. In a proposed judgment, later adopted by the full
Michigan Tax Tribunal, a hearing officer found that MUCC was
not entitled to an exemption as either a benevolent, charitable,
or educational institution for 1980, or as a charitable or educa-
tional institution for 1981. MUCC therefore paid both real and
personal property taxes for the property for the 1980 tax year.
MUCC appeals from the opinion and judgment of the Tax
Tribunal. *Held:*

1. The Tax Tribunal's findings need only be established by
substantial, competent, and material evidence on the whole
record in order to be sustained by the Court of Appeals.

2. The tribunal properly required MUCC to prove entitle-
ment to an exemption from taxation using the standard of
beyond a reasonable doubt.

3. The tribunal did not err in concluding that MUCC was not
an exempt educational institution. MUCC's activities do not

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 71 Am Jur 2d, State and Local Taxation §§ 307, 362.
[2] 72 Am Jur 2d, State and Local Taxation § 787.
[3] 29 Am Jur 2d, Evidence § 147.
[5] 71 Am Jur 2d, State and Local Taxation § 363.

relieve the state of any educational burden it would otherwise bear.

4. The tribunal did not err in concluding that MUCC was not exempt as a charitable institution. While some of MUCC's activities would qualify for such an exemption, a substantial part of its activities include attempting to influence legislation and other political activity. Thus, MUCC is both an educational and a political organization not entitled to an exemption as a charitable institution.

5. The tribunal did not err in concluding that "benevolent" is synonymous with "charitable" in the exemption statute. In addition, the treatment of the charitable institution issue encompasses the meaning which MUCC seeks to institute for benevolence.

Affirmed.

1. TAXATION — EXEMPTIONS — AD VALOREM TAXES.

A property owner must satisfy the following requirements in order to qualify for an exemption from ad valorem taxes on real estate or personal property pursuant to the statutes exempting certain nonprofit organizations from such taxation: (1) the real estate must be owned and occupied by the exemption claimant; (2) the exemption claimant must be a library, benevolent, charitable, educational, or scientific institution; (3) the claimant must have been incorporated under the laws of this state; and (4) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated (MCL 211.7, 211.7n, 211.7o; MSA 7.7, 7.7[4k], 7.7[4l]).

2. ADMINISTRATIVE LAW — TAXATION — TAX TRIBUNAL — APPEAL.

The Court of Appeals reviews findings of fact by the Tax Tribunal to determine whether such findings are established by substantial, competent, and material evidence on the whole record.

3. TAXATION — EXEMPTIONS — ENTITLEMENT — STANDARD OF PROOF.

A party claiming entitlement to an exemption from taxation must clearly establish such entitlement beyond a reasonable doubt.

4. TAXATION — EXEMPTIONS — NONPROFIT EDUCATIONAL INSTITUTIONS.

A party claiming exemption from ad valorem taxation of real estate or personal property pursuant to the statute exempting the taxation of such property of nonprofit educational institutions must fit into the general scheme of education provided by

the state and supported by public taxation and make a substantial contribution to the relief of the government's educational burden (MCL 211.7, 211.7n; MSA 7.7, 7.7[4k]).

5. TAXATION — EXEMPTIONS — CHARITIES.

Charity, for purposes of exemption from taxation relative to charitable institutions, is a gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons (MCL 211.7, 211.7o; MSA 7.7, 7.7[4l]).

*McGinty, Halverson, Brown & Jakubiak, P.C.* (by *Kenneth P. Frankland*), for petitioner.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo*), for respondent.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. This is a property tax case. Petitioner, Michigan United Conservation Clubs (MUCC), claimed to be exempt from ad valorem property taxes in Lansing Township for the tax years 1980 and 1981. In a proposed judgment, later adopted by the full Michigan Tax Tribunal, a hearing officer found that MUCC was not entitled to an exemption as either a benevolent, charitable, or educational institution under MCL 211.7; MSA 7.7 for 1980, or as a charitable or educational institution under MCL 211.7n; MSA 7.7(4k) and MCL 211.7o; MSA 7.7(4l) for 1981. MUCC was therefore required to pay both real and personal property taxes on property which was assessed at $154,200 for the 1980 tax year. It appeals as of right.

Petitioner's property consists of two adjacent lots on Wood and David Streets in Lansing Township. Together, the lots are approximately five

* Circuit judge, sitting on the Court of Appeals by assignment.

acres in size and contain an office building and warehouse. The warehouse is used to store petitioner's publications, camp materials, and office supplies, while the office building houses a conference room, work facilities for mailings, a typesetting and photographic area, a wildlife art collection, and offices for staff members.

Petitioner is a nonprofit corporation, composed of individuals and local affiliate clubs dedicated to the following purposes set forth in its bylaws:

"The purpose of this Corporation shall be:

"(A) To further and advance the cause of the environment and conservation in all its phases, and to perpetuate and conserve the fish, game, mineral, air, water, forest and land resources of the state, to so manage the use of all natural resources that this generation and posterity will receive the maximum benefit from the same.

"(B) To promote and encourage the scientific management and intelligent sustained use of the above resources, recognizing as a valid management tool the harvest and use of surplus wildlife and other renewable resources.

"(C) To promote conservation education programs designated to educate citizens in the cause of natural resource conservation and environmental protection and enhancement, creating in them an awareness and understanding of the importance of this aim, equipping them to work knowledgeably and effectively toward this achievement and through rational discussion to attempt resolution of all issues affecting our environment.

"(D) To protect and defend the right of our citizens to own, keep and bear arms.

"(E) To disseminate these purposes and objectives through an official publication known as *Michigan Out-of-Doors,* and through such other publications or media which may from time to time be desirable."

At the tribunal hearing, petitioner presented the

testimony of Thomas L. Washington, its Executive Director. Mr. Washington stated that subsection C above was the "most critical one of [MUCC's] goals and objectives" and that MUCC pursued this goal through its publications, workshops, seminars, lectures, slide presentations, and summer youth camp. The publications distributed by petitioner include: *Tracks,* a tabloid carrying articles and lessons on natural resource management issues which is distributed free of charge to 16,000 students, accompanied by a detailed teacher's guide; *Westwind Woods,* a novel involving "the struggle between wildlife and encroaching civilization", also distributed to schools; and *Our Vanishing Heritage,* a series of materials on endangered species, available to all school levels. Other publications are available to the general public, some apparently for a "nominal charge": *Great Lakes Nature Guide, Michigan County Maps and Outdoor Guide, Michigan Hiking and Skiing Trails, Trout Streams of Michigan, Hunters' Heritage, Wetlands Kit, Michigan Mapped Lakes Index, Conservation Planting, Environmental Careers, Michigan Concealed Weapons and Firearms Laws,* and *Michigan Out-of-Doors.* The last publication is the official publication of the MUCC and contains articles on natural resource management, features on Michigan flora and fauna, and a monthly legislative report. It is the "principal vehicle" by which MUCC expresses its concerns on public issues. Of these publications, MUCC has assumed the cost of publishing the *Michigan County Maps and Outdoor Guide* and *Michigan Concealed Weapons and Firearms Laws* from the state. Other documents are provided free of charge to the state, although the state has bought 20,000 copies of the *Michigan County Maps and Outdoor Guide* from MUCC.

MUCC also expresses its concerns on public issues by testifying at hearings before the Michigan Legislature, providing information to legislators and preparing detailed position papers on subjects before the Legislature. Mr. Washington testified that "it's safe to say that every significant piece of environmental legislation that's passed the Michigan Legislature in the last 30 or 40 years has had input from us", including the Inland Lakes and Streams Act, 1972 PA 346, the Wetlands Protection Act, 1979 PA 203, the Shorelands Protection and Management Act, 1970 PA 245, the Soil Erosion and Sedimentation Control Act, 1972 PA 347, the Michigan bottle bill, MCL 445.571 *et seq.;* MSA 18.1206[11] *et seq.,* and others.

Other activities sponsored by MUCC include a natural resource leadership training course designed to develop citizen leaders in the conservation movement, a national hunting and fishing day, a hunter safety training course, a summer youth camp focusing on natural resource management, outdoor survival, water and hunting safety courses, and the Detroit Outdoorama, an exposition of recreation and conservation education with workshops and demonstrations. While all these activities are available to the general public, most participants in the natural resource leadership training courses are MUCC members.

MUCC maintains a small reference library in the Wood Street office building. The library, which contains reference volumes, pamphlets, films, and slides, is open to members of the public for research, but materials are not loaned to the public. Some films and filmstrips may be borrowed with a $3 charge for shipping and cleaning the films.

The Wood Street headquarters also house a full-time environmental education specialist who deals

with career inquiries from the public, a staff ecologist who investigates natural resource management issues for both MUCC and the public, and a full-time coordinator who trains lay teachers for the MUCC Wildlife Discovery Program. This program is conducted in the public school systems in Detroit, Lansing, and Grand Rapids, although the lay teachers are not certified and are called Wildlife Discovery Guides by MUCC. Short wildlife ecology and fishery courses are presented to the public and are accepted for credit at Michigan State University. MUCC, however, does not grant any degrees, is not accredited by any educational accrediting institution, and receives no state money for any of its programs. When members of MUCC give lectures and talks at schools or public gatherings, part of their purpose in speaking is to set forth the view and position of MUCC. Finally, a "Save Our Guns Fund" is operated from the Wood Street headquarters. Although the fund has "nothing to do with Michigan United Conservation Clubs" and is dormant because there is no current movement to alter the Michigan Constitution to prevent private ownership and use of firearms, MUCC administers the fund, a role it accepted because one of MUCC's purposes is to protect and defend the rights of citizens to own, keep, and bear arms. This purpose is pursued as part of MUCC's work to advance the conservation of natural resources.

On the basis of this evidence, the tribunal concluded that petitioner's property was occupied by it solely, or at least principally, for its stated corporate purposes, but that those stated corporate purposes were not tax-exempt purposes. MUCC was held not to be benevolent or charitable because it "was neither organized primarily to pro-

vide something to persons in need nor to provide for the advancement of education, religion or other traditional object intended, first and foremost, to benefit the community at large".

In a proposed judgment, later adopted by the tribunal, the hearing officer concluded:

"In sum, petitioner's purposes are not the charitable business which, in the view of this hearing officer, the statutes have contemplated. Rather it appears that petitioner's purposes, as administered from its Wood Street headquarters property, are primarily for the benefit and enlightenment of its members, sportsmen and others with an active, conservation-recreation minded interest in our natural resources. The organization's David Street warehouse property, not unlike any other storage facility, shows no 'charitable' purpose by whatever measure defined."

The tribunal also concluded that MUCC was not an educational institution because it did not fit into the state's general scheme of education, was not organized principally for educational purposes as commonly understood and did not sufficiently relieve the government's educational burden.

MUCC appeals claiming that the tribunal made errors of law and factual findings not supported by competent, material, or substantial evidence on the whole record.

I

GENERAL REQUIREMENTS

MCL 211.7; MSA 7.7 (in effect for tax year 1980) and MCL 211.7o; MSA 7.7(4l) and MCL 211.7n; MSA 7.7(4k), exempt from ad valorem taxes real estate or personal property owned by certain non-profit organizations. To qualify for exemption, a

property owner must satisfy the following require-
ments:

"(1) The real estate must be owned and occupied by
the exemption claimant;
"(2) The exemption claimant must be a library, be-
nevolent, charitable, educational or scientific institu-
tion;
"(3) The claimant must have been incorporated under
the laws of this State;
"(4) The exemption exists only when the buildings
and other property thereon are occupied by the claim-
ant solely for the purposes of which it was incorpo-
rated." *Engineering Society of Detroit v Detroit,* 308
Mich 539, 550; 14 NW2d 79 (1944).

It is undisputed that MUCC has satisfied parts
(1) and (3) of this test. In addition, the tribunal
found that MUCC's property was "occupied solely,
or at least principally" for its stated corporate
purposes, and this finding is not challenged by
respondent on appeal. Thus, the only issue before
this Court is whether the tribunal erred in finding
that MUCC is not a benevolent, charitable, or
educational institution under the exemption stat-
ute.

II

BURDEN OF PROOF

Petitioner first claims that the tribunal erred in
requiring it to prove entitlement to the exemption
beyond a reasonable doubt.
The Tax Tribunal stated in its opinion that the
petitioner's burden was as follows:

"It is beyond dispute that exemption statutes are to
be strictly construed in favor of the taxing unit. Inas-

much as exemption from taxation effects the unequal removal of the burden generally placed on all landowners to share in the support of local government and is, therefore, the antithesis of tax equality, the burden of proof is upon the person or entity claiming an exemption to clearly establish, beyond reasonable doubt, his right thereto. *St Joseph's Church v Detroit,* 189 Mich 408; 155 NW 588 (1915); *Evanston YMCA Camp v State Tax Comm,* 369 Mich 1; 118 NW2d 818 (1962); *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660; 242 NW2d 749 (1976). In the absence of a clear showing that the property qualifies for exemption, the assessability and assessment are presumed valid. MCL 211.31."

Petitioner objects to the use of the reasonable doubt standard because it believes Michigan Const 1963, art 6, § 28, requires only that it establish its right to an exemption with competent, material, and substantial evidence on the whole record.

In so construing Const 1963, art 6, § 28, petitioner has confused the standard of review used by this Court in reviewing Tax Tribunal findings of fact with the burden of proof imposed on an exemption claimant at tribunal hearings. Const 1963, art 6, § 28 states:

"Sec. 28. All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

"In the absence of fraud, error of law or the adoption

of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

Thus, it is the tribunal's findings which need only be established by substantial, competent, and material evidence on the whole record.

Petitioner is also incorrect in stating that the use of the reasonable doubt standard was improper. The tribunal properly stated the prevailing law:

" 'it is a well-settled principle that, when a special privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt.' 2 Cooley, Taxation (4th ed), § 672, pp 1403-1404. See *Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948)." *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 754; 298 NW2d 422 (1980).

## III

### EDUCATIONAL INSTITUTION

Petitioner next argues that the tribunal erred in concluding that it was not an exempt educational institution.

MCL 211.7; MSA 7.7 and MCL 211.7n; MSA 7.7(4k) exempt from ad valorem taxation real estate or personal property owned and occupied by

nonprofit educational institutions. In the recent case of *Ladies Literary Club v Grand Rapids, supra,* the Supreme Court had occasion to discuss in some detail this exemption. The Court noted:

"Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption.

"In *Detroit v Detroit Commercial College* [322 Mich 142; 33 NW2d 737 (1948)], our Court determined that an institution seeking an educational exemption *must fit into the general scheme of education provided by the state and supported by public taxation.* This proposition was refined in *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231; 160 NW2d 778 (1968), which declared that an educational exemption may be available to an institution otherwise within the exemption definition, *if the institution makes a substantial contribution to the relief of the burden of government.*

"It cannot be maintained that were it not for the Ladies Literary Club's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. *The club's programs do not sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption."* 409 Mich 755-756. (Emphasis added; footnote omitted.)

It is evident therefore that the touchstone of our inquiry in determining whether the tribunal correctly denied MUCC an educational institution exemption is whether MUCC's activities substantially contribute to relieving the government's educational burden. See *Circle Pines Center v Orangeville Twp,* 103 Mich App 593; 302 NW2d 917 (1981), and *Kalamazoo Nature Center, Inc v Cooper Twp,* 104 Mich App 657; 305 NW2d 283 (1981).

We are convinced that the tribunal was correct in determining, on the basis of the record before it, that MUCC was not entitled to exemption as an educational institution.

We recognize that MUCC undoubtedly makes a valuable and useful contribution to the general education of the public regarding matters relating to conservation and wildlife management. Further, we are aware that Const 1963, art 4, § 52 declares conservation and development of Michigan's natural resources to be a paramount public concern. Nonetheless, petitioner made no showing before the tribunal that the state bears any specific or identifiable burden to educate the public in matters relating to conservation or wildlife management. The state's duty to "provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction", required by the constitutional provision cited, could be accomplished through legislation without once educating the public on the advantages of conservation. Although, in general, petitioner's activities may well be beneficial to the public and of value to the state, it cannot be said that those activities relieve the state of any burden it would otherwise bear. For this reason, the tribunal correctly concluded that MUCC is not entitled to the educational institution exemption.

## IV

### CHARITABLE INSTITUTION

MUCC next contends that the tribunal erred in concluding that it was not exempt as a charitable institution.

Recently, in *Retirement Homes of Detroit Annual Conference of United Methodist Church, Inc*

*v Sylvan Twp,* 416 Mich 340, 348-349; 330 NW2d 682 (1982), the Supreme Court had occasion to quote with approval the following definition as it relates to the charitable institution exemption:

" '[C]harity * * * [is] a *gift,* to be applied consistently with existing laws, *for the benefit of an indefinite number of persons,* either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or *otherwise lessening the burdens of government.'* " (Emphasis in original.)

We are satisfied that the tribunal could and did properly conclude, on the record before it, that MUCC is not operated in such a way that there is a gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons.

It is true that petitioner contributes, for free or at only its cost, a large number of pamphlets and books which instruct on the values of conservation and development of natural resources. Petitioner also contributes freely of its members' and staff's time for lectures and presentations on these subjects. In addition, petitioner conducts hunter-safety training programs in youth camps that are open to the public. The record established that participants in the youth camps must pay a fee, but apparently this is met by affiliate members when a child is unable to pay. These activities are clearly open to any interested persons and, contrary to the tribunal's implicit findings, are not restricted to a select group. If this was the limit of petition-

er's activities, we would not hesitate to conclude that it is entitled to a charitable exemption. Activities of almost this precise nature led to both this Court and the tribunal finding a charitable institution in *Kalamazoo Nature Center, Inc v Cooper Twp, supra.*

However, petitioner's activities go far beyond those set forth above. Petitioner engages in a considerable amount of lobbying. MUCC's bylaws include numerous references to its interest in promoting specific forms of conservation as opposed to other forms (*i.e.,* petitioner was formed to "promote and encourage the scientific management and intelligent sustained use of the above resources, recognizing as a valid management tool the harvest and use of surplus wildlife and other renewable resources" and to "protect and defend the right of our citizens to own, keep and bear arms"). Petitioner also uses its speaking opportunities to further these messages, as opposed to restricting its teaching to the less partisan subject of conservation in general. While some effort to persuade must be allowed under any charitable system, petitioner clearly and forcefully advances a specific viewpoint. To promote its views, petitioner actively participates in the legislative process and disseminates its "message" through many of its publications. The testimony adduced before the tribunal established that a substantial part of petitioner's activity includes attempting to influence legislation and other political activity. It can thus be seen that petitioner is, in a very real sense, both an educational and a political organization. Because this is true, we cannot say that the tribunal erred in denying to petitioner the charitable exemption sought.

## V

### Benevolent Institution

Petitioner finally argues that the tribunal erred in concluding that "benevolent" is synonymous with "charitable" in the exemption statute.

Until the adoption of MCL 211.7o; MSA 7.7(4l) in 1980, an organization could qualify as either a benevolent or charitable institution. MCL 211.7; MSA 7.7. The tribunal concluded that these terms were synonymous and did not distinguish between the two.

Petitioner argues that benevolence has a broader meaning than charitable, citing *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660; 242 NW2d 749 (1976). There, the dissent stated, "The Legislature employs the separate designations of 'benevolent' and 'charitable' institutions from which we may infer separate meanings. There is little case law on the subject, and it is inconsistent. Although 'benevolence' may well be more liberally interpreted than 'charitable', this dissent is directed toward the more narrow meaning of the term 'charitable', as proposed by the prevailing opinion". 396 Mich 676, fn 3.

Other than this one reference to a "broader" interpretation for benevolence, this Court is unaware of any case in which the terms were treated differently. In addition, the treatment of "charitable" in the earlier issue hereinabove would appear to encompass the meaning that petitioner seeks to institute for benevolence: "An act dictated by kindness, goodwill, or disposition to do good". *German Corp v Negaunee German Aid Society,* 172 Mich 650; 138 NW 343 (1912).

For the reasons set forth above, we are of the

view that the decision of the tribunal is correct.
That decision is affirmed. No costs are awarded to
either party, a question of public concern being
involved.