MICHIGAN UNITED CONSERVATION CLUBS v LANSING
TOWNSHIP

Docket No. 72784. Argued June 5, 1985 (Calendar No. 22).—Decided
November 27, 1985.

Michigan United Conservation Clubs, a nonprofit organization,
claimed property tax exemptions as an educational and charita-
ble institution for the 1980 and 1981 tax years. The Michigan
Tax Tribunal denied the claims. The Court of Appeals, D. E.
HOLBROOK, JR., P.J., and ALLEN and TAHVONEN, JJ., affirmed
(Docket No. 60105). The plaintiff appeals.

In a unanimous opinion by Justice CAVANAGH, the Supreme
Court *held:*

The Tax Tribunal's denial of the plaintiff's claimed exemp-
tions as an educational or charitable institution is supported by
material, competent, and substantial evidence on the whole
record.

1. An institution seeking an educational exemption must fit
into the general scheme of education provided by the state and
supported by public taxation. However, something more than
serving the public interest is required to bring one claiming an
exemption as an educational institution within the goals and
policies affording a tax exemption. An educational exemption
may be available to an institution otherwise within the exemp-
tion definition, if the institution makes a substantial contribu-
tion to the relief of the burden of government. In this case,
while conservation and the wise development of natural re-
sources are paramount concerns, conservation education per se
is not mandated, and it was not shown how the plaintiff's
public school programs fit into the general scheme of education
provided by the state or lessen the state's educational burden.
Nor was evidence presented indicating that the plaintiff's other
activities are required to be performed by any state entity.

2. The proper focus in this case in determining whether the
plaintiff is entitled to an exemption as a charitable institution

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] Am Jur 2d, State and Local Taxation §§ 362 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under Taxes
      § 4.

is whether the plaintiff's activities, taken as a whole, constitute a charitable gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons. The Tax Tribunal properly concluded that they do not. The Court of Appeals improperly focused on the plaintiff's lobbying efforts and political activities as the sole distinguishing factor in affirming the decision of the tribunal. The fact that an organization advances a particular point of view, advances a message, or seeks legislation consistent with its purposes should have a neutral effect on whether it is entitled to tax-exempt status.

Affirmed as modified.

129 Mich App 1; 342 NW2d 290 (1983) affirmed as modified.

1. TAXATION — EXEMPTIONS — NONPROFIT ORGANIZATIONS — EDUCA-TIONAL INSTITUTIONS.

A nonprofit organization seeking an exemption as an educational institution from paying property taxes must fit into the general scheme of education provided by the state and supported by public taxation, and must make a substantial contribution to the relief of the burden of government (MCL 211.7n; MSA 7.7[4k]).

2. TAXATION — EXEMPTIONS — NONPROFIT ORGANIZATIONS — CHARI-TABLE INSTITUTIONS.

A nonprofit organization seeking an exemption as a charitable institution from paying property taxes must show that its activities, taken as a whole, constitute a charitable gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons (MCL 211.7o; MSA 7.7[4-l]).

*McGinty, Brown, Jakubiak, Frankland & Hitch, P.C. (by Kenneth P. Frankland), for the plaintiff.*

*Thrun, Maatsch & Nordberg, P.C. (by Patrick J. Berardo), for the defendant.*

CAVANAGH, J. The issue requiring our decision is whether the Tax Tribunal's decision to deny plaintiff's claimed exemptions as an educational or charitable institution is supported by material, competent, and substantial evidence on the whole

record. Const 1963, art 6, § 28. We hold that the record supports the Tax Tribunal's decision, and affirm the judgments rendered by the Tax Tribunal and the Court of Appeals. However, we modify a portion of the Court of Appeals opinion, since we believe that it used an improper analysis in upholding the Tax Tribunal's decision.

I

This appeal involves claimed exemptions for the 1980 and 1981 tax years. Michigan United Conservation Clubs (MUCC) filed its petition with the Tax Tribunal on May 9, 1980. At that time, the fourth paragraph of § 7 of the General Property Tax Act exempted the following property:

> Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions and memorial homes of world war veterans incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated. [1968 PA 342.]

1980 PA 142, effective June 2, 1980, eliminated the word "benevolent" and reorganized the applicable exemptions into distinct sections. From June 2, 1980, through the 1981 tax year, MUCC claims exemptions under the following sections:

> Real estate or personal property owned and occupied by nonprofit theater, library, educational, or scientific institutions incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incor-

porated is exempt from taxation under this act. [MCL 211.7n; MSA 7.7(4k).][1]

Real estate or personal property owned and occupied by nonprofit charitable institutions incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated; and charitable homes of fraternal or secret societies and nonprofit corporations whose stock is wholly owned by religious or fraternal societies which own and operate facilities for the aged and chronically ill, in which the net income from the operation of the corporations does not inure to the benefit of any person other than the residents is exempt from taxation under this act. [MCL 211.7o; MSA 7.7(4-l).][2]

Since the Legislature has not defined the terms "educational" or "charitable" institutions as they appear in these statutes, it is our primary duty to interpret these phrases and glean the Legislature's intent. In general, tax exempt statutes must be strictly construed in favor of the taxing authority.

[1] This is the "educational" exemption statute. The statute was later amended by 1981 PA 212, which added the following sentence:

"In addition, real estate or personal property owned and occupied by a nonprofit organization organized under the laws of this state devoted exclusively to fostering the development of literature, music, painting, or sculpture which substantially enhances the cultural environment of a community as a whole, is available to the general public on a regular basis, and is occupied by it solely for the purposes for which the organization was incorporated is exempt from taxation under this act."

We concern ourselves primarily with the first sentence of this section. The amendment was enacted in response to our opinion in *Ladies Literary Club v Grand Rapids,* 409 Mich 748; 298 NW2d 422 (1980). See n 3.

[2] This is the "charitable" exemption statute. Mucc argued before the Court of Appeals that the Tax Tribunal erred in treating the terms "benevolent" and "charitable" synonymously. See *MUCC v Lansing Twp,* 129 Mich App 1, 16-17; 342 NW2d 290 (1983). However, plaintiff has not raised this issue here. It now only claims an exemption as an educational or charitable institution and asserts that the amendment of this statute has not altered the basis for either exemption.

However, this rule does not mean that we should give a strained construction which is adverse to the Legislature's intent. See *City of Ann Arbor v The University Cellar, Inc,* 401 Mich 279, 288-289; 258 NW2d 1 (1977).

II

MUCC is a nonprofit organization composed of individuals and local affiliate clubs. Its headquarters is located on approximately five acres of land and includes an office building and small warehouse. The bylaws were introduced at the tribunal hearing and state:

The purpose of this Corporation shall be:

(A) To further and advance the cause of the environment and conservation in all its phases, and to perpetuate and conserve the fish, game, mineral, air, water, forest and land resources of the state, to so manage the use of all natural resources that this generation and posterity will receive the maximum benefit from the same.

(B) To promote and encourage the scientific management and intelligent sustained use of the above resources, recognizing as a valid management tool the harvest and use of surplus wildlife and other renewable resources.

(C) *To promote conservation education programs designated to educate citizens* in the cause of natural resource conservation and environmental protection and enhancement, *creating in them an awareness and understanding of the importance of this aim, equipping them to work knowledgeably* and effectively toward this achievement and through rational discussion to attempt resolution of all issues affecting our environment.

(D) To protect and defend the right of our citizens to own, keep and bear arms.

(E) To disseminate these purposes and objectives through an official publication known as *Michigan*

*Out-of-Doors,* and through such other publications or media which may from time to time be desirable. [Emphasis supplied.]

Mucc's Executive Director, Thomas L. Washington, testified that subsection (C) of the bylaws was the organization's most critical goal. The various means used to achieve this goal, as well as other facts relevant to the claimed exemptions, are well-documented by the Court of Appeals:

Other activities sponsored by mucc include a natural resource leadership training course designed to develop citizen leaders in the conservation movement, a national hunting and fishing day, a hunter safety training course, a summer youth camp focusing on natural resource management, outdoor survival, water and hunting safety courses, and the Detroit Outdoorama, an exposition of recreation and conservation education with workshops and demonstrations. While all these activities are available to the general public, most participants in the natural resource leadership training courses are mucc members.

Mucc maintains a small reference library in the Wood Street office building. The library, which contains reference volumes, pamphlets, films, and slides, is open to members of the public for research, but materials are not loaned to the public. Some films and filmstrips may be borrowed with a $3 charge for shipping and cleaning the films.

The Wood Street headquarters also house a full-time environmental education specialist who deals with career inquiries from the public, a staff ecologist who investigates natural resource management issues for both mucc and the public, and a full-time coordinator who trains lay teachers for the mucc Wildlife Discovery Program. This program is conducted in the public school systems in Detroit, Lansing, and Grand Rapids, although the lay teachers are not certified and are called Wildlife Discovery Guides by mucc. Short wildlife ecol-

ogy and fishery courses are presented to the public
and are accepted for credit at Michigan State
University. MUCC, however, does not grant any
degrees, is not accredited by any educational ac-
crediting institution, and receives no state money
for any of its programs. When members of MUCC
give lectures and talks at schools or public gather-
ings, part of their purpose in speaking is to set
forth the view and position of MUCC. Finally, a
"Save Our Guns Fund" is operated from the Wood
Street headquarters. Although the fund has "noth-
ing to do with Michigan United Conservation
Clubs" and is dormant because there is no current
movement to alter the Michigan Constitution to
prevent private ownership and use of firearms,
MUCC administers the fund, a role it accepted
because one of MUCC's purposes is to protect and
defend the rights of citizens to own, keep, and bear
arms. This purpose is pursued as part of MUCC's
work to advance the conservation of natural re-
sources. [*Michigan United Conservation Clubs v
Lansing Twp,* 129 Mich App 1, 6-7; 342 NW2d 290
(1983).]

### III

The Tax Tribunal denied MUCC's request for an
educational exemption. In affirming the decision,
the Court of Appeals correctly noted our discussion
of this exemption in *Ladies Literary Club v Grand
Rapids,* 409 Mich 748, 755-756; 298 NW2d 422
(1980):[3]

---

[3] Plaintiff attacks our analysis in *Ladies Literary Club,* saying that
its application has led to unusually harsh and strict results. In that
case, we denied tax exempt status sought pursuant to MCL 211.7;
MSA 7.7 to an organization involved in various social and cultural
activities. We noted that tax-exempt statutes must be strictly con-
strued and should only be expanded by legislative enactment. Soon
after the release of our opinion in that case, the Legislature added the
second sentence to MCL 211.7n; MSA 7.7(4k). See 1981 PA 212. That
amendment was in direct response to our opinion and granted tax-
exempt status to organizations, like the Ladies Literary Club, which
were devoted exclusively to fostering the development of literature,

Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption.

In *Detroit v Detroit Commercial College,* [322 Mich 142; 33 NW2d 737 (1948)] our Court determined that an institution seeking an educational exemption must fit into the general scheme of education provided by the state and supported by public taxation. This proposition was refined in *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231; 160 NW2d 778 (1968), which declared that an educational exemption may be available to an institution otherwise within the exemption definition, if the institution makes a substantial contribution to the relief of the burden of government.

It cannot be maintained that were it not for the Ladies Literary Club's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. The club's programs do not sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption. See *American Society of Agricultural Engineers v St Joseph Twp,* 53 Mich App 45; 218 NW2d 685 (1974); *American Concrete Institute v State Tax Comm,* 12 Mich App 595; 163 NW2d 508 (1968).

MUCC argues that the state has a responsibility to educate the public on matters concerning conservation of the state's natural resources based on Const 1963, art 4, § 52, which states:

The conservation and development of the natu-

---

music, painting, or sculpture. See House Legislative Analysis to House Bill 4494. Nonetheless, we analyzed the activities of the club with regard to whether they fell within the institutional exemption categories found in the Property Tax Act. They did not. In response to this, the Legislature created a new exemption category based on cultural activities. Thus, although the amendment may have changed the result in *Ladies Literary Club,* the analysis employed to reach that result remains viable today. Accordingly, we decline MUCC's invitation to relegate that holding to the facts of the case.

ral resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction.

The Court of Appeals summarized the evidence relating to the programs and materials supplied to the public schools. 129 Mich App 5-7. In addition to this evidence, MUCC points to three specific activities which it claims lessens the government's educational burden. First, it provides hunter safety classes for minors, who are required to be instructed in hunting safety procedures before receiving a license. Second, MUCC publishes a booklet compiling the concealed weapons and firearm laws of this state. Third, it publishes an atlas of the county road system and fishing streams. Washington testified that responsibility for these publications was taken over from the State Police and the Department of Natural Resources after those entities experienced budgetary cutbacks.

Notwithstanding this evidence, we agree with the Court of Appeals analysis of the educational exemption issue. Const 1963, art 4, § 52 recognizes that conservation and the wise development of our natural resources are paramount concerns. However, conservation education per se is not mandated. Therefore, we fail to see how MUCC's public school programs "fit into the general scheme of education provided by the state." *Ladies Literary Club, supra,* p 755. Similarly, there was no evidence presented to indicate that any state entity is required to publish atlases of county maps or summaries of the firearm laws.

Evidence established that MUCC teaches minors about hunting safety. Although the applicable statutes were not specifically mentioned, we note that

minors are generally required to pass a firearm safety competency examination prior to receiving a license. See MCL 316.303; MSA 13.1350(303). Furthermore, the Hunting and Fishing License Act requires the Department of Natural Resources to provide a course of instruction in the safe handling of firearms. MCL 316.327; MSA 13.1350(327). However, we do not believe that this program substantially reduces the government's educational burden.

As is often true in similar cases, mucc's purposes and programs are laudable. However, we cannot conclude that the Legislature intended to grant tax-exempt status on the basis of these activities. We accordingly affirm that portion of the Court of Appeals opinion which denied the educational tax exemption.

## IV

Mucc also claims an exemption as a charitable institution. The tribunal concluded that the plaintiff failed to establish that it was entitled to the exemption.[4]

---

[4] The hearing officer's proposed judgment, which was later adopted in full by the tribunal, concluded:

"In scrutinizing with care the instant claim of exemption, it becomes apparent that Petitioner is not uniquely situated, apart from any number of other organizations not specifically exempted under the general property tax act, as the champion of a valuable social purpose(s) or as a provider of non-profit services to the public at a reasonable cost. A thorough review of the proofs leads to the conclusion that, for the subject tax years, Petitioner was neither organized primarily to provide something to persons in need nor to provide for the advancement of education, religion or other traditional object intended, first and foremost, to benefit the community at large.

"In sum, Petitioner's purposes are not the charitable business which, in the view of this Hearing Officer, the statutes have contemplated. Rather, it appears that Petitioner's purposes, as administered from its Wood Street headquarters property, are primarily for the benefit and enlightenment of its members, sportsmen and others with an active, conservation-recreation minded interest in our natural

The Court of Appeals affirmed the tribunal's decision. The court properly cited the following definition, which we reaffirm today to be the proper test:

> "[C]harity . . . [is] a *gift,* to be applied consistently with existing laws, *for the benefit of an indefinite number of persons,* either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or *otherwise lessening the burdens of government."* [See *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp,* 416 Mich 340, 348-349; 330 NW2d 682 (1982), and cases cited therein. Emphasis in original.]

The Court of Appeals noted that MUCC provided several services which could be considered charitable gifts. For example, MUCC contributes various pamphlets and books on conservation and natural resource management. See 129 Mich App 5. Its members and staff frequently contribute their time free of charge toward similar ends. The hunter safety classes are provided to children in youth camps for a fee, but if a child cannot afford the program, affiliate members pay the fee. The Court of Appeals stated that if this was the limit of MUCC's activities, it would not hesitate to afford MUCC the charitable exemption. The Court continued:

> However, petitioner's activities go far beyond those set forth above. Petitioner engages in a considerable amount of lobbying. MUCC's bylaws

resources. The organization's David Street warehouse property, not unlike any other storage facility, serves no 'charitable' purpose by whatever measure defined."

include numerous references to its interest in promoting specific forms of conservation as opposed to other forms (*i.e.,* petitioner was formed to "promote and encourage the scientific management and intelligent sustained use of the above resources, recognizing as a valid management tool the harvest and use of surplus wildlife and other renewable resources" and to "protect and defend the right of our citizens to own, keep and bear arms"). Petitioner also uses its speaking opportunities to further these messages, as opposed to restricting its teaching to the less partisan subject of conservation in general. While some effort to persuade must be allowed under any charitable system, petitioner clearly and forcefully advances a specific viewpoint. To promote its views, petitioner actively participates in the legislative process and disseminates its "message" through many of its publications. The testimony adduced before the tribunal established that a substantial part of petitioner's activity includes attempting to influence legislation and other political activity. It can thus be seen that petitioner is, in a very real sense, both an educational and a political organization. Because this is true, we cannot say that the tribunal erred in denying to petitioner the charitable exemption sought. [129 Mich App 15.]

The Court of Appeals predominant focus on MUCC's "lobbying" efforts and other "political activities" was improper.[5] A number of organizations and institutions which are legally entitled to tax-exempt status engage in activities similar to those noted by the Court of Appeals. However, the fact that an organization advances a particular point of view, advances a "message," or seeks legislation

[5] MUCC strongly protests the Court of Appeals characterization of its activities as "lobbying" and "political," since such characterization may jeopardize its tax-exempt status under IRC, § 501(c)(3). We decline to ascribe any special meaning to these terms today, and we decline to address the propriety of the Court of Appeals characterization, since this issue is not essential to our decision in this case.

consistent with its purposes should have a neutral
effect on whether it is entitled to tax-exempt sta-
tus. Here, the Court of Appeals used MUCC's politi-
cal activity as the sole distinguishing factor in
affirming the tribunal's decision on this issue. This
alone was not a valid reason for denial of the
exemption.[6]

Notwithstanding the Court of Appeals improper
focus, we hold that the tribunal's denial of the
charitable exemption was supported by competent,
material, and substantial evidence on the whole
record.

The proper focus in this case is whether MUCC's
activities, taken as a whole, constitute a charitable
gift for the benefit of the general public without
restriction or for the benefit of an indefinite num-
ber of persons. See *Retirement Homes v Sylvan
Twp, supra; Michigan Baptist Homes v Ann Arbor,*
396 Mich 660, 670; 242 NW2d 749 (1976); *Edsel &
Eleanor Ford House v Grosse Pointe Shores,* 134
Mich App 448, 458; 350 NW2d 894 (1984), *lv den*
419 Mich 961 (1984).

It is clear that the activities summarized by the
Tax Tribunal and the Court of Appeals do not
amount to gifts for the benefit of an indefinite
amount of persons or the general public without
restriction. Although members of the public may
occasionally visit MUCC's office building and use its
library, plaintiff's answers to interrogatories indi-
cated that use of the property generally is not
available to non-MUCC members. Washington testi-

___

[6] This does not mean that evidence of lobbying or political activity
can never be relevant. Evidence of political activity may or may not
be relevant depending on the facts of the case and the type of
exemption sought. Although the question is not before us today, we
surmise that certain forms of lobbying may preclude a tax exemption.
For example, we doubt that an organization whose sole purpose is
lobbying would be entitled to an educational or charitable exemption.
Thus, we cannot say that political activity has *no* relevance to a
claimed tax exemption.

fied that the use of the library by a nonmember depended on the purpose for which it was to be used. For example, students or other persons who wanted to research a particular resource management problem were granted permission to use the facilities. We do not consider these responses to be indicative of a benefit to the general public without restriction.

A vast majority of MUCC's publications are available to the general public for a fee. Although these fees often only cover the costs of publication, we cannot characterize their dissemination as a gift. See *Retirement Homes, supra,* pp 349-350. On the contrary, MUCC's purposes and activities benefit its members and others with an active interest in the conservation of our natural resources. Therefore, we agree with the tribunal's decision that the requisite charitable gift has not been conferred on the general public without restriction or on an indefinite number of people.

The Court of Appeals opinion is affirmed as modified herein. No costs, a public question being involved.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with CAVANAGH, J.